EDWARD ECKHARD, Respondent, *against* EDWARD DONOHUE, Appellant.

(Decided April 5th, 1880).

Under the act of 1872, entitled "An act for the protection of livery stable keepers and other persons keeping horses at livery or pasture" (L. 1872, c. 498), when the owner of a horse demands it from a livery stable keeper without offering to pay to him his charges for keeping it, the livery stable keeper is entitled to a reasonable time thereafter in which to make up the account of what is due and serve it, with the notice of lien in the manner required by the statute. The act, being remedial, must be liberally construed to give full effect to the remedy.

APPEAL from a judgment of a district court in the city of New York.

This was an action of replevin for a horse, alleged to be wrongfully detained by the defendant from the plaintiff. The facts are stated in the opinion. Upon trial in the district court, the justice rendered judgment for the plaintiff. From the judgment the defendant appealed to this court.

CHARLES P. DALY, Chief Justice.—There was conflict between the plaintiff and the defendant, as to whether the defendant refused to give the plaintiff the horse, when he called for it, on September 12th, 1878, unless he gave some money, as there was then, according to the defendant's account $150 due for the keeping of the horse; and conflict also as to the amount that was due; but the justice did not pass upon these questions of fact. He decided the case in favor of the plaintiff, upon the ground simply that the defendant had refused to give the horse when the plaintiff called for it; the defendant, at that time, not having acquired a lien in the manner provided by statute. He held that this refusal was wrongful; and that the service of the bill of the charges and a notice of lien in the manner provided by statute, on the same day, some four or five hours afterwards, did not give the defendant any right to retain the horse thereafter, by virtue of the

Eckhard *v.* Donohue.

service of notice in writing of the lien; and held that the action of replevin, which was brought two days thereafter, for a wrongful detention, was well brought; the refusal on the morning of the 12th, before the notice of lien, being sufficient to create a cause of action.

The construction which the justice put on the statute was a very narrow and technical one in its application to the facts of this case; and the justice himself felt it to be so, for he says, at the close of his opinion, " I should be glad, if I could come to a different conclusion. The money is due for the keeping of the horse, and there ought to be a lien in the case; but there is not, in my judgment."

The statute is a remedial one: it gives a new remedy, and a very just one, for the protection of persons keeping horses at livery or pasture. It is declared to be "an act for the protection of livery stable keepers, and other persons keeping horses at livery or pasture;" and all such statutes are to be liberally construed so as to give full effect to the remedy, in view of the beneficial purpose contemplated by them (*Hudler* v. *Golden,* 36 N. Y. 447; *Weed* v. *Tucker,* 19 Id. 433).

In this case, the plaintiff, who was a butcher, had kept his horse in the defendant's stable, from the 10th of January, 1878, to the day of the demand—the 12th of September, following; during which time he made partial payments, and furnished the defendant with meat; but the charges for keeping the horse generally exceeded the meat supplied; the payments made were small, and it appeared from the defendant's account, which was regularly kept in his books, from day to day, that on the morning of the 12th of September, there was a large balance due the defendant, amounting to $150.94. A day or two before that, the plaintiff sold a wagon, from the proceeds of which, the defendant expected that he would pay something to reduce this amount, which he did not; and it was for that reason, that the defendant, as he testified, refused to allow him to take the horse out when he came for it that day as usual. The plaintiff testified that, when he called, between 7 and 8 o'clock in the morning, to get his horse and cart, the defendant simply refused to give it to him, without offering any

reason; a very improbable statement, where he is contradicted by an account given by the defendant of what occurred, which is more natural and probable; that is, that the defendant complained that the plaintiff did not pay him anything from the proceeds of the wagon; and said to him, " Leave that horse there until you get me some money," and that the plaintiff afterwards returned and said: " If I get you $15 and $5 to-morrow, can I go out to-morrow?" and that the defendant said, "yes." That he afterwards returned with another man, who claimed that he had owned the horse; upon which, the defendant told the other man that the plaintiff owed him a good deal of money; that he had sold a light wagon, and promised to give him some money, but gave him none; and that the man then turned to the plaintiff and said: " Why didn't you pay the man the board for the horse? I pay you the board for this horse; " and that the plaintiff made no reply. That the man claimed, however, to own the horse; upon which the defendant asked him if he would pay what was due; to which he answered that he would not, but that he would get the horse out; and upon their leaving, the defendant had the bill duly made out, which was a very long one, embracing about forty items of charges and credits, over a period of eight months; and went to his lawyer and had a notice of lien prepared under the statute, which was served, with the bill of charges or account, upon the plaintiff, the same day, about one o'clock.

This, in my judgment, was sufficient to obtain a lien, under the statute, for the amount that was due. The statute requires, to obtain the lien, that not only a notice in writing must be given, of the intention to retain the horse or horses until the charges are paid; but that such a notice must embrace the amount of such charges; and where, as in this case, the party came to take the horse out in the morning, and the objection to his doing so was, that he must pay something to reduce the amount which had then accrued for the keeping of the horse, which he did not do, some time must necessarily be allowed for the livery stable keeper, under such circumstances, to make out the account of what is due, and prepare the formal notice by which the lien is acquired; or otherwise, it would be in the

power of an unscrupulous debtor, by suddenly making such a demand, to cut off the livery stable keeper altogether from his lien, unless he were prepared at the moment to hand the debtor the bill of charges and the notice in writing, which the statute requires. Such a construction would operate rather to defeat the statute than to aid the enforcement of the remedy, which is the construction required in remedial statutes. Where an account is running on from day to day, or from week to week, for the keeping of a horse, the livery stable keeper would have to be continually serving written notices of his lien and his charges under such a construction as the justice has given; and it is a much more reasonable one, that when the owner of a horse demands the animal, without offering to pay what is due for keeping it, the livery stable keeper should have thereafter a reasonable length of time to make up the account, and serve it with the notice in the formal manner which the statute requires for his protection; and, as in this case, an account running over a period of eight months has to be made up of charges, credits and offsets, four or five hours was not an unreasonable length of time to enable the defendant to do so.

In my judgment, the construction given by the justice to the statute would tend more to defeat than to make the remedy effectual—to take away the protection which the statute, from its language, meant to give; and in my opinion, the judgment should be reversed.

J. F. DALY and VAN HOESEN, JJ., concurred.

Judgment reversed.