## MUNSON v. PORTER.

1. **Livery-stable-keeper's Lien**: APPLICATION OF TO ACCOUNT ANTE-DATING THE STATUTE. Prior to the enactment of chapter 25, Acts of the Eighteenth General Assembly, (McClain's Statutes, p. 609,) a livery-stable-keeper acquired no lien upon property kept by him, as such, in the course of his business; (*McDonald v. Bennett*, 45 Iowa, 456;) and where an account for keeping property at a livery-stable began before the enactment of the statute, and continued to accrue up to a date subsequent thereto, and there was no evidence from which to infer that the keeping of the property subsequent to the statute was in pursuance of a contract made prior thereto, *held* that the lien did not attach for that part of the account which accrued prior to the taking effect of the statute, but that it did attach, and could be enforced, for that part of the account accruing subsequently thereto.

2. ———: ATTACHES TO PROPERTY EXEMPT FROM EXECUTION. Under the statute, property exempt from execution is not excepted from the operation of a livery-stable-keeper's lien.

3. ———: WAIVER BY CLAIMING TOO MUCH: FACTS NOT CONSTITUTING. It may be that a livery-stable-keeper, who has a lien, should be deemed to waive or forfeit it, by wrongfully claiming a lien for too large an amount, if he fails to disclose the true amount, and the debtor can not be presumed to know the true amount, so as to be able to tender it; but, before a lien should be adjudged to be forfeited in this way, the assertion of the excessive claim should be clear and distinct, and should operate, at the time thereof, to interfere with a claimed right to the property on the part of the owner; and the evidence herein (see opinion) does not reveal such a case.

4. ———: NOT FORFEITED BY USE OF PROPERTY. When a bailee treats the thing bailed as his own, he cannot afterwards be allowed to occupy the inconsistent position of claiming a lien upon it. But a bailee may always use the thing bailed so far as is necessary for its preservation. And where a livery-stable-keeper used a horse left in his care, not only to the extent of giving the horse proper exercise, but, beyond that, let him out to others, sometimes when he was wanted by the owner, but the owner at such times, without objection, accepted a substituted horse, *held* that this was not such a conversion of the horse as would defeat the lien of the stable-keeper.

*Appeal from Scott District Court.*

FRIDAY, APRIL 25.

ACTION for the recovery of specific personal property, to-

wit, a horse, buggy, harness and buffalo robe.   The defend-
ant claims the right to hold possession of the property by
virtue of a livery-stable-keeper's lien.   There was a trial
without a jury, and judgment was rendered for the defend-
ant for costs.   The plaintiff appeals.

*E. F. Richman*, for appellant.

*George E. Gould*, for appellee.

ADAMS, J.—The defendant is a keeper of a livery and feed
stable in the city of Davenport.   As such, the plaintiff em-
1. LIVERY-          ployed him to keep five different horses, and
stable-keep-
er's lien: ap-   among them the horse in question.   He employed
plication of to
account ante-   him also to keep the other property in question.
dating the
statute.         The defendant's account against the plaintiff
commenced in 1878.   His charge for keeping the horses
amounted to $456.22.   No charge was made for keeping the
other property.   The plaintiff paid on account $140, leaving
due the defendant, as he claims, $316.22.   The amount charged
for keeping the horse in question is $210.88.   In the spring
of 1881, the defendant began to ·complain of the plaintiff's
slowness in making payments, and threatened to detain the
property.   In November of that year this action was com-
menced to recover possession.   The questions presented per-
tain to the validity of the defendant's lien.

Prior to the enactment of chapter 25 of the Acts of the
Eighteenth General Assembly, a livery-stable-keeper acquired
no lien as such upon property kept by him in the course of
his business.   *McDonald & Co. v. Bennett*, 45 Iowa, 456.
The keeping of the horse in question commenced before that
time.   For the·keeping prior to the time when the act took
effect it would seem to be clear that the defendant acquired
no lien.   The plaintiff insists that he acquired none for the
keeping afterwards.   The fact appears to be that the keeping
was continuous.   The plaintiff's theory is that, the contract
for keeping being made at a time when the law gave no lien,

it must be presumed that the parties did not contemplate that the defendant should have a lien, and that he could not properly be deemed to have acquired one in the performance of that contract.

If the defendant had contracted in the outset to keep the horse during the time, which he did, it could not have been said that he was induced to make the contract by the fact that he might have a lien; and there would perhaps be some plausibility in the plaintiff's position. But no specific time appears to have been agreed upon during which the horse was to be kept. There was, then, no executory contract to be treated as a unit, and to be governed by the law in force at the time it was made. As, then, the defendant was free to continue or discontinue keeping the horse after the act, it is not for us to say that he did not continue in reliance upon the act. In our opinion, the plaintiff's position cannot be sustained.

There was evidence showing that the property was exempt from execution. The plaintiff contends that a livery-stable-keeper's lien cannot attach upon such property. It may be conceded that the lien can be enforced only by execution. But the statute which gives the lien does not except exempt property, but expressly gives the lien upon *all* property coming into the livery-stable-keeper's hands. We do not wish to be understood as holding that the rule would be different if the right to a lien existed simply by common law. An inkeeper's lien exists by common law, and it was held in *Swan v. Bournes*, 47 Iowa, 501, that it attached upon exempt property.

2. ——: attaches to property exempt from execution.

But the plaintiff contends that, even if the defendant had a lien, he lost it by claiming a lien for a general balance of account, and for indebtedness for which he had no lien. The balance claimed was $316.22, which included something for keeping other horses, and something, we think, for keeping the horse in question for which he had no lien.

3. ——: forfeiture of by claiming too much: facts not constituting.

What the rule would be if the plaintiff had tendered the amount for which the defendant had a lien, and the defendant had refused to surrender the horse, we need not determine. It seems to have been held that, where a person who has a lien upon property sets up a claim to it distinct from, and independent of, his lien, he will be deemed to have waived his lien. Perhaps, too, he would be deemed to have waived or forfeited it by wrongfully claiming a lien for a larger indebtedness than that for which he had a lien, if he failed to disclose the true amount, and the same could not be presumed to be within the knowledge of the debtor, so that he could tender the true amount for which the lien was held. *Thatcher v. Harlan*, 2 Houst., (Del.,) 178. See, also, in this connection, *Winter v. Coit*, 7 N. Y., 288; *Hanna v. Phelps*, 7 Ind., 21; *Boardman v. Sill*, 1 Campb., 410, note; *Judah v. Kemp*, 2 Johns. Cas., 411; *Holbrook v. Wight*, 24 Wend., 176; *Mexal v. Dearborn*, 12 Gray, 336. But we see nothing in the case at bar to hinder the plaintiff from discovering the true amount for which the defendant had a lien, so as to enable him to make a tender of that amount, if he desired. The defendant's account appears to have been itemized, showing the amount due for keeping the horse in question, and the time for which the charge was made. Probably, aside from the account, the plaintiff's knowledge should be presumed. Besides, it does not appear that the defendant distinctly claimed a lien for the whole balance of account, or for more than he had a lien for. He did say, it is true, at one time, according to the testimony of the plaintiff, that the plaintiff could not have the horse any more until he settled the account. But the plaintiff was not demanding his horse at that time, and no question was then raised as to the extent of the defendant's lien, or whether he had a lien for any amount or not. What was said appears to have been a mere loose threat to induce a settlement. If under any circumstances a lien could be deemed forfeited by the assertion of a claim for a lien for too large an amount, the assertion

should be clear and distinct, and operate to interfere in the present with a claimed right on the part of the owner. The demand of the horse by the plaintiff, which he says the defendant refused to comply with, and upon which he relies in connection with the refusal as giving him a right of action, was made several months after the threat above mentioned. This demand was made by a person employed by the plaintiff for that purpose. To the demand the plaintiff replied: "If the doctor (meaning the plaintiff) pays his bill, he can have his horse and buggy." Possibly it might be thought that there was an implication that unless the plaintiff paid the whole bill, or all that was due, he could not have his horse and buggy. But the extent of the defendant's lien appears to have received no especial consideration by either party, and does not appear even to have been mentioned. The plaintiff's position probably was, then as now, that the defendant had no lien at all, while the defendant claimed that he had. Farther than that it does not appear that the parties ever went. Manifestly, the defendant's reply to the demand for the horse should not be held to forfeit the lien. The plaintiff was in the wrong himself in insisting that the defendant had no lien, and his wrongful position precluded any fair attempt to ascertain the extent of the lien.

The plaintiff, however, relies upon another fact which remains to be stated. The defendant, during the time when he was keeping the horse, used it occasionally, and occasionally allowed others to use it. On one or two occasions the plaintiff called for his horse and did not get it, because it was out of the stable and in use by some one. On such occasions, however, it appears that the defendant supplied the plaintiff with another horse, and the plaintiff made no objection. There was evidence tending to show that the plaintiff directed that his horse should be exercised, and that the horse was not used more than was necessary for its own good. The plaintiff insists, however, that the defendant, in using the horse and allowing

4. ———: not forfeited by use of property.

it to be used by others, was guilty of a conversion of the horse, and that by such conversion the defendant waived his lien.  The doctrine upon which he relies is that, where a bailee treats the thing bailed as his own, he shall not be allowed afterward to occupy the inconsistent position of claiming a lien upon the same thing.  For the purpose of the opinion, it may be conceded that, if the defendant had used the horse, or had let it go to hire, under such circumstances as to evince a claim of ownership, he would be deemed to have waived his lien.  But a bailee may always use the thing bailed so far as is necessary for its preservation.  This is implied in the very contract of bailment.  But in the case at bar there was evidence showing an express direction to that effect.  The only doubt which could arise, we think, would be as to whether the defendant did not exceed the directions. A use was allowed which interfered with the plaintiff's use. But if there was any wrong in that, we do not think that the plaintiff is in a position to take advantage of it.  He accepted a substituted horse, and that, too, without objection.

One other fact ought perhaps to be mentioned in this connection.  It appears that the defendant occasionally used the plaintiff's buggy.  There is certainly nothing in the nature of the contract to justify that, and the evidence does not show that the defendant had any express permission.  The most that we can say is that there was evidence tending to show that at one time, when the plaintiff had no buggy, he had occasionally used the defendant's buggies without charge; and it is barely possible that the relation and practice of the parties were such as to justify the inference of a permission by plaintiff to defendant to use his buggy.  But we do not feel called upon to determine that.  The plaintiff has assigned no error which raises specifically the question of the use of the buggy, and no such question is alluded to in the argument of the plaintiff's counsel.  In our opinion the judgment of the district court must be

AFFIRMED.