Minshall, C. J.
Whether the instructions of the court to the ]ury stated the law applicable to the case made by the tendency of the proof, depends upon the nature and character of the lien given by sections 3212 and 3213, Rev. Stats., to a person who furnishes food and care for any “ horse ” by virtue of an agreement with the owner, .to secure the payment of the same.
These sections are as follows :
“ Sec. 3212. A person who feeds or furnishes food and care for any horse, mare, foal, filly, gelding, mule, or ass, by virtue of any contract or agreement with the owner thereof, shall have a lien therefor, to secure the payment of the same, upon such animal.”
“ Sec. 3213. A person feeding or furnishing food and care for any horse, mare, foal, filly, gelding, mule, or ass, shall retain such animal for the period of ten days, at the expiration of which time, if the owner does not satisfy such lien, he may sell such animal at public auction, after giving the owner ten days’ notice in a newspaper of general circulation in the county where the services were rendered; and after satisfying the lien and costs that may accrue, any residue remaining shall be paid to the owner.”
It seems to us very clear upon a view of these sections, that the intention of the legislature was, in enacting them, to give to the person furnishing such food and care a lien upon the animal as a security for the food furnished and care bestowed, with the incidents of a lien at common law in analogous cases. The first section gives the “ lien,” and the next one provides the mode of maintaining and enforcing it: The “ person ” shall “ retain ” the animal for ten days, and if, at the expiration of that time, the owner does not satisfy the lien,- he may, on giving the requisite notice, sell it at public auction.
The nature and incidents of a common law lien of this kind are well settled : It is a right to retain property until certain claims against it are satisfied; and possession is not only essential to its creation, but also to its continuance. Where the party voluntarily parts with the possession of the property upon which the lien has attached, he is divested of his lien. *567 2 Kent Com. 638; Smith’s Mercantile Law, 697; Sweet v. Pym, 1 East. 4; Lickbarrow v. Mason, 6 East. 21; Hammond v. Barclay, 2 East 227 ; Jordan v. James, 5 Ohio R. 89, 98. In McFarland v. Wheeler, 26 Wend. 473, it is said, that “ the very definition of a lien as the right to retain, indicates that it must cease when the possession is relinquished. This principle, so clearly founded in reason and so congruous to public utility and the convenience of trade, is supported by the uniform testimony of the decisions.”
The right to sell the animal upon notice and apply the proceeds to satisfying the lien, does not affect its classification with similar common law liens; it only gives a plain and simple remedy for enforcing the lien.
The evidence .tended to show, and the charge of the court was applicable to, a case where the owner of a horse temporarily leaves it with the owner of a feed-stable to be fed and cared for; there is no definite arrangement as to time; it may be for less or more than a day; this depends upon the convenience of the owner who resides out of the city; when he wishes to return home, the horse is delivered to him, and the feed and care is charged to him in an account by the keeper. There is no express agreement at any time that the horse is to be returned Now how, under these circumstances, it can be inferred, as the court charged the jury, that there is an implied contract on the part of the owner to return the horse, we are unable to see. The owner is, for the time, simply a customer of this particular feed-stable. The keeper may expect that when the owner again comes to the city he will again patronize him by sending his horse to his stable. But when this may be, he can neither rightfully demand to know, or expect to be informed. How would the owner, as a matter of law, violate any agreement for which damages could be recovered, if he should, in the meantime, conclude to change his patropage and never return the horse. If it were otherwise then it might be inferred that every customer of a store is under an implied contract to continue to deal with it. If he were in debt for goods previously sold, he might be under a moral obligation not to withdraw his custom until he had- discharged what he owed, *568 but there would be no legal obligation to that effect, arising from the circumstances.
The lien provided by this statute does not arise upon contract., True, the fee.d must be furnished under an agreement with the owner, but where this has been done’ the statute creates the lien in favor of the party furnishing it, irrespective of any agreement therefor to that effect. The lien given is a right to retain the property, that is its possession, as a security for the debt, and if this right is not insisted on when the horse is called for, the owner can not be said to violate any agreement in not afterward returning it; for he has no notice of an intention on the part of the keeper to assert a lien, when the property is voluntarily delivered to him ; and, therefore, any supposed agreement to return could only relate to a thing of which he has no notice, and, which in fact, has no existence.
Therefore, in a case like the one to which the court applied its charge, the person furnishing the feed and bestowing the care must, if he would assert a lien on the animal therefor, do so by retaining its possession when called for by the owner, unless his charges are p>aid. If he do not, and voluntarily deliver the animal to the owner, he must be held to have waived his right to assert a lien under the statute, and to be satisfied with the personal liability of the owner for the charges. Such is the rule in common law liens based on possession, and we see no reason why the rule should not apply here as well as there. It is more in harmony with the general policy of our statutes “ which always strive to secure public registration when possession is not given and retained, and which expressly provide for such registration -when the/ in terms create a lien not depending on possession.” Holmes, J., in Burton v. Frye, 139 Mass. 126, 130. See also the following cases : Perkins v. Boardman, 14 Gray, 481; Papinsau v. Wontworth, 136 Mass. 543; Forth v. Simpson, 66 Eng. Com. Law, 680.
What should be the rule in cases where the animal is placed by the owner with a person to be fed and cared for, not temporarily — the horse being ordinarily kept at Tome or some *569 where else by the owner — but, permanently for.some time either definite or indefinite, presents a different question. In such case where the owner is allowed to use it, its voluntary delivery to him for such purpose, might be said to imply a contract to return the animal, and a failure to do so would be such a fraud as to estop the owner from setting up that the lien had been lost by such voluntary delivery. But this is not the case before us, and we express no definite opinion upon it at this time.
We have examined the cases cited by counsel for the plaintiff in error, but fail to find that they give any considerable support to his view of the case.
The case of Young v. Kimball, 23 Penn. St. 195, is simply to the effect that where the owner forcibly or clandestinely obtains possession of the subject of the lien, the lienor’s right is not impaired by such deprivation of the possession. Munson v. Porter, 63 Ia. 453, rightly holds that demanding more than is due, will not entitle the owner to replevin the property without paying what is due. And Eckland v. Donahue, 9 Daly, 214, holds that replevin of the property cannot be had by bi’inging it before the defendant had time to make out his bill and give notice of his intention to perfect a lien, as required by statute.
The cases of Caldwell v. Tutt, 10 Lea. (Ten.) 258, and of Smith v. Marden, 60'N. H. 509, would tend to support the case where animals are, for the time being, permanently left with a person to be fed and cared for, with the right in the owner to use them. In such cases it is held that the lien is not thereby affected as against a creditor of the owner. The possession of the animal by the owner under such circumstances is not regarded as terminating the bailment, the pos•session being constructively that of the bailee, and under an implied contract to return the animal as soon as the use is at an end. This seems somewhat plausible, but whether sound or not, we do not, for the reasons before stated, now determine.

Judgment affirmed.