BENJAMIN D. BOWDEN *vs.* MICHAEL DUGAN.

Somerset.   Opinion January 1, 1898.

*Lien on Animals.   Mortgagee.   Tender.   Trover.   R. S., c. 91, § 41.*

A mortgagee of animals may subject them to a lien for feeding or sheltering them under R. S., c. 91, § 41, by his consent.

The defendant, a livery stable keeper, claimed to hold a horse against the plaintiff, who had a chattel mortgage thereon, by virtue of the statute R. S., c. 91, § 41, for its keeping, etc. The plaintiff denied that the defendant had such a lien because the feeding and sheltering were not furnished "by virtue of a contract with or by consent of the owner." It appeared that the horse had been left with the defendant by the mortgagor on January 18, 1896, and that subsequently the defendant notified the plaintiff of his claim. On March 9, the plaintiff replied : "The horse is holden for his feed, you can proceed legally to get your pay from the horse." *Held;* that the horse was there-

after held by the defendant by virtue of the plaintiff's consent; and that the defendant had a valid lien for all food and shelter after March 9; but that the defendant acquired no lien, as against the plaintiff, before that day.

The defendant refused to surrender the horse to the plaintiff until the whole bill for its keeping was paid, including the time for which he had no lien as well as that for which he had a lien. *Held;* that the plaintiff was thereby excused from making a tender of the amount secured by the valid lien, and could maintain an action of trover without proof of such tender.

ON REPORT.

The case is stated in the opinion.

By agreement of the parties the law court was to determine the amount of damages, if judgment should be rendered in favor of the plaintiff.

*J. W. Manson and G. H. Morse*, for plaintiff.

No lien at common law: *Allen* v. *Ham*, 63 Maine, 532. Under the statute no lien except by mortgagee's consent; and he is considered, in such cases, to be the owner. *Small* v. *Robinson*, 69 Maine, 425; *Howes* v. *Newcomb*, 146 Mass. 76. Consent may be either express or implied; but it means something more than knowledge. *Hayes* v. *Fessenden*, 106 Mass. 228; *O'Conner* v. *Hurley*, 147 Mass. 147. A mortgagor of chattels cannot give a lien upon them as against a mortgagee without his implied or express consent. *Field* v. *Roosa*, 159 Mass. 132; *Ingalls* v. *Vance*, 61 Vt. 582. Defendant made his claim of a lien wrongful for two reasons; first, because he had no claim until plaintiff knew the horse was in his stable, and second, because the price demanded was $2.00 per day, which was more than was due him according to his testimony given afterwards.

Lien lost: *Hamilton* v. *McLaughlin*, 145 Mass. 20.

*S. J. and L. L. Walton*, for defendant.

The horse was fed and sheltered by consent of the owner, the mortgagee being considered the owner. *Howes* v. *Newcomb*, 146 Mass. 76. In that case the court say, that if upon all the circumstances surrounding the transaction indicating the expectation of the mortgagee as to the management of the mortgaged horses by the mortgagor, he may be presumed to have understood that the

mortgagor would take them to a stable keeper to be boarded, and no objection was made, such consent should be implied.

In *Lynde* v. *Parker*, 155 Mass. 481, the following instructions were sustained: "In order that the defendant may have a valid lien as against this plaintiff for the keeping of the horse, the defendant must show, by the fair preponderance of the evidence, that the horse was boarded by its owner at the defendant's stable by the consent, express or implied, of the plaintiff; that if the plaintiff believed, and had reason to believe, that the owner of the horse was not himself keeping the horse, but was boarding him at some livery stable in Malden, and the plaintiff made no objection, the jury would be authorized to find (it not being in dispute that the owner was boarding the horse at the defendant's livery stable) that the horse was boarded at the defendant's stable in Malden by the consent of the plaintiff, even although the plaintiff did not know at which particular livery stable in Malden the horse was being boarded."

Counsel also cited:—*Hilton* v. *Merrill*, 106 Mass. 528; *Davis* v. *Humphrey*, 112 Mass. 309; *Hammond* v. *Danielson*, 126 Mass. 294.

A rule as to implied consent as strong as that of the Massachusetts court is not needed in order for the defendant to obtain judgment in this case.

SITTING: PETERS, C. J., FOSTER, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

SAVAGE, J. Trover by plaintiff, a mortgagee, against defendant, a livery stable keeper, for the conversion of a horse. One Redman, the mortgagor, left the horse in question with the defendant, January 18, 1896. Subsequently, the defendant learned that the plaintiff was owner or mortgagee of the horse, and wrote to him (date not certain) as follows:—

"Mr. Bowden. We have your horse here with about $20.00 board due. Call for horse any time. Pay what due. Mr. Redman left him here."

The defendant claims also to have written plaintiff at another time, and to have telephoned to him. About March 9, 1896, the plaintiff replied as follows:—

"Mr. Dugan.

    Dear Sir:

"The horse left with you as you say I presume I hold a bill of sale on to secure the payment of a note yet due so I cannot legally take him but as the horse is holden for his feed you can proceed legally to get your pay from the horse."

Subsequently, in March or April, and again in July, prior to the purchase of the writ, the plaintiff made demands on the defendant for the horse, and the defendant refused to deliver him to the plaintiff. Thereupon this action was brought, and we are urged to hold that such refusal to deliver was a conversion.

The defendant claimed to hold the horse against the plaintiff by virtue of a lien. He bases his claim upon R. S., ch. 91, § 41: "Whoever pastures, feeds or shelters animals by virtue of a contract with or by consent of the owner; has a lien thereon for the amount due for such pasturing, feeding or sheltering," etc. The plaintiff denies that the defendant had a lien, and says that the defendant's claim for feeding and sheltering the horse did not arise "by virtue of a contract with or by consent of the owner," in this case, the plaintiff himself. We think otherwise. We think, after the plaintiff wrote to the defendant, March 9, "the horse is holden for his feed, you can proceed legally to get your pay from the horse," that the horse was held by the defendant by virtue of the "consent" of the plaintiff, mortgagee, qua owner; and that the defendant had a valid lien for all food and shelter furnished after March 9. We are also of the opinion that the defendant acquired no lien, as against the plaintiff, for food and shelter furnished before that day.

At this point, the plaintiff claims that the defendant waived or lost his lien for keeping and sheltering the horse after March 9, by refusing to surrender him, on demand, without the payment also of the sum due for keeping and sheltering before March 9. On the

other hand, the defendant claims that this action is not maintainable without proof of a tender of what was reasonably due for the keeping and sheltering for which he had a valid lien. And this is the issue.

What are the facts? It is not claimed that any tender was made. One witness for the plaintiff testified that in the month of March, or the first of April, 1896, he went to see the defendant in the interest of the plaintiff; that he told defendant he had come to get the horse; that defendant said he would give up the horse if witness would pay what was due, "some forty odd dollars;" that "he should not give the horse up to any one till the bill was paid." The amount of the "bill" makes it clear that it covered the entire time from January 18. Another witness testified that defendant said, on the same occasion, "he should hang on to the horse until he got the amount due," "he would not give it up to any one unless this amount was paid." The defendant says he told plaintiff's agent that he "would keep the horse till somebody paid his board." We are satisfied from the evidence that defendant's "bill" was for the whole time, both before and after March 9; that he insisted upon the payment of that for which he had no lien as well as that for which he had a lien, and that he refused to surrender the horse until the whole bill was paid.

It is the opinion of the court that, by this refusal, the plaintiff was excused from making tender of the amount secured by the valid lien, and can maintain this action without proof of such tender. The law, in a case like this, requires no useless ceremonies. The plaintiff was not compelled to tender what the defendant said he would not receive. *Mattocks* v. *Young*, 66 Maine, 459; *Brown* v. *Lawton*, 87 Maine, 83. The defendant "made no distinction between what occurred before and what occurred after the notice to the plaintiff, but demanded the whole in one sum and as one debt." *Hamilton* v. *McLaughlin*, 145 Mass. 20.

The language of some of the cases seems to indicate that if a person who has a lien upon property sets up a claim to it, distinct from and independent of his lien, he will be deemed to have waived his lien. *Munson* v. *Porter*, 63 Iowa, 453; *Jones* v. *Tarleton*, 9

M.. & W. 675 ; *Kerford* v. *Mondel*, 5 H. & N. 931. But a rule which is sufficient for the proper disposition of this case, and which is satisfactory to us, is that " the demand for the whole as one debt, and the refusal to deliver the property unless the whole was paid, was a refusal to deliver the property upon the payment of the amount which had accrued after the notice, and to accept a tender of that, and rendered a tender of it unnecessary." *Hamilton* v. *McLaughlin*, supra, and cases cited. The last case cited is, in all essential particulars, precisely like the case at bar.

The defense fails. What were the damages? The testimony respecting the value of the horse was somewhat conflicting. Upon the whole, we think the entry should be,

*Judgment for plaintiff for forty dollars.*