EPHRAIM SIFF AND JACOB A. COHEN, Appellants, v. JOE JACKSON and JULIUS KLEIN, Respondents.

**Kansas City Court of Appeals, February 1, 1915.**

1. **CONVERSION: Attachment: Furs.** The plaintiffs sued in conversion to recover from the defendant $1037, the value of some furs. The defendants purchased furs from plaintiff on consignment, the title to remain in plaintiffs, and not to be sold without the written consent of the plaintiffs, and, if sold to be accounted for immediately to plaintiffs. Defendants sold some and did not account therefor. Plaintiffs demanded the return of the furs, but defendants only returned part of them. *Held*, that the conversion of the proceeds of the goods sold, which should have been promptly remitted to plaintiffs was a conversion of the goods themselves.

2. ———: **Bailments: Demand.** Where the expressed terms of the bailment do not impose a duty on the bailee to deliver the property to the bailor at the end of the bailment, the mere fact that the bailee has property deliverable on demand implies that there will be some one to whom it may be delivered and he is not bound to transmit the property on a demand by letter or telegram. In such cases a proper demand "should merely involve a request for the delivery of possession, and should not require the defendant to perform other acts with respect to the chattel."

3. ———: ———: ———. Where defendants sold some of the consigned goods and converted the proceeds to their own use, that was a wrongful breach of the terms of the bailments, which amounted in law to a conversion of all the property and dispensed with the necessity for a demand and refusal which were necessary only in case plaintiffs, without cause, decided to terminate the bailments. A demand and refusal are evidentiary and not creative of a conversion and are not essential to a cause in conversion where the bailee has exercised an unauthorized dominion over the property to the exclusion and in defiance of the rights of the bailor.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

REVERSED AND REMANDED.

*Ellis, Cook & Barnett* for appellants.

(1)   The legal wrong denominated ''conversion'' is any unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. (a) A demand and refusal is not a conversion in itself, but simply evidentiary of one.   (b) A demand and refusal, while necessary in some cases of initial rightful possession, is not necessary in all; it is not necessary where the facts in evidence establish an unauthorized exercise of dominion by a defendant over the goods of a plaintiff.   38 Cyc. 2005; also, 2031; Peoples State Savings Bank v. Railroad, 158 Mo. App. 519, 528, 529, 532; Wilkinson v. Misner, 158 Mo. App. 551, 555; Ward v. Transfer & Storage Co., 119 Mo. App. 83, 90; Allen v. McMonagle, 77 Mo. 478, 481; McLachin v. Barker, 64 Mo. App. 511, 521; Himes v. McKinney, 3 Mo. 382, 384; Huxley v. Hartzell, 44 Mo. 370, 372; Knipper v. Blumenthal, 107 Mo. 665, 670; Newman v. Mercantile Trust Co., 189 Mo. 423, 445; Banking House v. Brooks, 52 Mo. App. 364, 366. (2) The conduct and statements of the defendants, even after the commencement of the action, are admissible insofar as they throw any light on the intention of the defendants prior to the institution of suit.   38 Cyc. 2079; State ex rel. Bredell's Ex'r v. Baldwin, 36 Mo. 561, 565; Langsdorf v. Field, 36 Mo. 440, 445; Kemp v. Zeppenfeld, 2 Mo. App. 195, 203; Baldwin v. Boulware, 79 Mo. App. 10.

*H. H. McCluer* and *Jay Read* for respondents.

(1)   A conversion, in a legal sense, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff's right, or in withholding the possession from plaintiff under a claim of title inconsistent with

plaintiff's.  The idea of property is the essence of conversion.  Neimetz v. St. Louis Agricultural Assn., 5 Mo. App. 59, 63; Shewalter v. Railroad, 84 Mo. App. 589, 599; Port Huron Co. v. Cobble, 124 Mo. App. 647; National Bank of Commerce v. Railroad, 135 Mo. App. 74; People's State Savings Bank v. Railroad, 158 Mo. App. 519.

JOHNSON, J.—Plaintiffs, who are wholesale dealers in furs in New York, began this suit December 6, 1912, in the circuit court of Jackson county against defendants Jackson and Klein who, at the time, were selling furs at retail in Kansas City.  The cause of action stated in the petition was the alleged conversion of certain furs of the value of $1037, which defendant received from plaintiffs on consignment.  A writ of attachment in aid of the action was sued out and levied on personal property as the property of defendants.  In their answer defendants admitted that furs of the reasonable value of $1037 "were shipped to the defendants upon consignment, that is, upon a contract and understanding between the parties that the same were to be held by the defendants, subject to the orders of plaintiffs with the right in the defendants to sell said goods and account to the plaintiffs therefor as their agents upon commission and that . . . until so sold were to remain the property of the plaintiffs" but denied that defendants "have violated in any manner, the said consignment agreement or converted and appropriated said goods to their own uses and purposes."

At the close of the evidence of plaintiffs the court gave the jury a peremptory instruction to return a verdict for defendants.  Plaintiffs took an involuntary nonsuit with leave and in due procedure brought the case here by appeal.

Defendants were itinerant vendors of furs which they largely procured from wholesale merchants upon

consignment contracts which gave them the right to sell at retail. Each had obtained a part of the goods in controversy from plaintiffs and had traveled alone from city to city until they met in Kansas City where they leased a storeroom for two months, placed their stocks together therein and proceeded, as partners, to sell them at retail. Jackson assumed the performance of Klein's contract with plaintiffs which, in all material respects, was similar to his own. A statement of his dealings with plaintiffs will suffice for present purposes.

In the latter part of September, 1912, Jackson purchased from plaintiffs, at their house in New York, three fur coats for $150, and paid $100 on the purchase price. He also procured other goods of the total value of $960, upon the following written receipt, dated September 28, 1912: "I have this day received from Siff & Cohen, the goods specified below of the value set opposite each item respectively . . . said goods remaining the property of Siff & Cohen and subject at all times to their order and the same may not be sold without the consent in writing of Siff & Cohen first had and obtained."

Permission was given Jackson to sell any or all of the goods at prices not less than those at which they were billed on condition that the latter prices of goods thus sold would be remitted to plaintiffs whenever sales were made. Jackson testified in a deposition taken by plaintiffs: "Q. These merchandise were the property of Siff & Cohen? A. Returnable at any time. Q. Whenever you sold merchandise you were supposed to remit to Siff & Cohen for that merchandise? A. I was supposed to send him the money for same. . . ."

On October 29, 1912, plaintiffs shipped another consignment of the total value of $357 to Jackson at Kansas City. The day before this shipment was forwarded they received a remittance of $100 from Jackson on

account of sales of consigned goods and in their letter acknowledging receipt admonished him to "let us know which of our goods you have sold and every time you send us money wou would oblige us by letting us know what goods you have sold."

On receipt of this letter and the shipment, Jackson wrote plaintiffs complaining indignantly of the prices at which the articles in that consignment were billed and threatening that "as soon as I have sold enough of your goods to get my money out, which I have already sent you, you will have the pleasure of receiving all the rest of the goods back." The letter then became personal: "The trouble with you is," it continued, "that you have always dealt with people that never pay, or some that are compelled to get goods from you, and charge them prices as you please, and you have done the same with me. I certainly am getting inducement from you for my honesty. . . . You will greatly favor me by not excusing yourself as I don't expect an answer from you on this letter." His expectations were not realized, for plaintiffs wrote a hot rejoinder and a peremptory order to him to return "our goods at once." Jackson replied under date of November 23d, "I will be in New York on. or about the 20th of December and will settle my account with you, in the meantime I am trying to sell your goods rather than bring them back. I have sold the sables."

Plaintiffs answered November 25th, complaining that he had not remitted for the sables and for other goods he had sold and had not reported sales as requested and stating, in substance, that if he did not perform these conditions of the contract on or before December 2d, "we will demand the return of our goods both yours and Mr. Klein's." On November 30th Jackson replied in the firm name of Jackson & Klein, that "the goods are ready to be shipped back and will do so on the return of the invoice which I signed. En-

closed you will find list of goods I have sold also the goods which Mr. Klein has left. . . . Mr. Klein will also return the goods upon return of the invoice which he signed.''

December 2d, plaintiffs telegraphed Jackson and Klein: ''According list received you and Klein sold more than three hundred dollars goods we demand you return all your goods today wire us if sending goods today or will not take goods back and will sue for full amount if wire not received will telegraph our attorney to act immediately.''

December 4th, Jackson answered by telegram: ''Will be in New York Monday with goods.''

He arrived in New York with a trunk filled with furs which he had carried with him as baggage. He had the trunk taken to another store and, learning that this suit had been brought at Kansas City and the goods in his store seized under the writ of attachment, began negotiations with plaintiffs for a settlement which ended in nothing being accomplished. In the course of the negotiations, Jackson, accompanied by a Mr. Rosenblatt, called at plaintiffs' store and, according to the testimony of plaintiff Siff, the following conversation ensued:

''He said I brought back some of the goods. I left in Kansas City about $350 worth and if you are willing to take back the goods I brought here and leave the other case in Kansas City still on memorandum, I will pay you for the goods sold. I told him I could not do that. I want pay for all the goods. Mr. Rosenblatt spoke to me and said I ought not to be so hard with him even though I am right; that I should try to get together with him on a settlement. I thought the matter over, and spoke to Mr. Cohen in regard to the matter and finally told him that if he would pay for the goods that he had left in Kansas City and for the goods he sold I would take back the goods he had brought back, and I would even take notes for part payment.

He said he could not pay all cash.  I told him those notes would have to be indorsed; he said he did not know who he could get to indorse them.  I said Rosenblatt should indorse them.  Mr. Rosenblatt said he would not indorse them.  He left that night with Rosenblatt to try to get an indorser, and he was to call up the next morning to our place to carry the settlement through.  He did not come up; waited all day and 'phoned him toward the evening, and said he would not do anything further in the matter.  He said I could do as I please."

Afterward the trunk which was securely locked and fastened was sent to plaintiffs' store and plaintiffs wrote Jackson "We accepted the trunk and put same in storage for your account.  We cannot take these goods back for the reason given you when you were here."

Sometime later the trunk was opened in the presence of the parties and their lawyers and it was found to contain, so plaintiffs testified, less than half the goods for which remittances had not been made.  Jackson and Klein exhibited great excitement over this disclosure and accused plaintiffs of having secretly opened the trunk and abstracted part of its contents.  This, of course, was denied by plaintiffs.

On the whole the evidence of plaintiffs tends to show that defendants had sold a part of the consigned good in Kansas City and failed to pay for them before Jackson started to New York and, of course, before this suit was begun, and that they failed to put all of the remaining goods in the trunk but retained a part of them in their store.  In our consideration of the demurrer to the evidence we must consider these facts as proved and proceed to the question of whether or not they entitled plaintiffs to sue when they did, for the recovery of the value of all of the consigned goods which had not been paid for, upon the theory that the failure of defendants to perform the conditions of the

consignment contracts constituted a conversion of all the goods.

The position of defendants is that since they lawfully came into the possession of the property as the bailees of plaintiffs, they could not become liable as for conversion until plaintiffs had made a lawful demand for a return of the property and the demand had been refused. Further they argue that a demand by letter or telegram which if complied with would have put them to trouble and expense in shipping the goods would not be sufficient.

Of this last point it may be said that where the expressed terms of the bailment do not impose a duty on the bailee to deliver the property to the bailor at the end of the bailment, the mere fact that the bailee has property deliverable on demand implies that there will be someone to whom it may be delivered and he is not bound to transmit the property on a demand by letter or telegram. [Pattee v. Gilmore, 18 N. H. 460; Durgin v. Gage, 40 N. H. 303; Teeple v. Dredging Co., 137 Ia. 206, 38 Cyc. 2038.] In such cases a proper demand "should merely involve a request for the delivery of possession, and should not require the defendant to perform other acts with respect to the chattel." [28 Am. & Eng. Ency. of Law (2 Ed.), 707.]

But on the facts disclosed it is not apparent that this rule could have any bearing on the issues of this case. Plaintiffs waived their first demand for a return of the goods, but later, in the telegram of December 2d, repeated it, and in the reply telegram sent by Jackson two days later, he promised to be in New York the following Monday with the goods. Such answer amounted to an unequivocal acceptance of the demand as sufficient and a recognition of a duty which the terms of the contracts, we think, imposed upon him and Klein to return the goods at the end of the bailments to plaintiffs at New York. The contracts gave plaintiffs the right to terminate the bailments at any

time, with or without cause, and the clear intent of the parties was that plaintiffs should not be required to accept the goods at the place where the bailees chanced to be at the time of the demand, but that they would return the goods to plaintiffs at New York on demand.

If it was necessary for plaintiffs to make formal demand, the telegram of December 2d was sufficient, since it required the performance by defendants of no duty not imposed on them by the terms of their contracts.

The argument that the action was begun before a refusal of defendants to comply with that demand is based on the hypothesis that Jackson was in the act of returning the unsold goods when the suit was brought. But this is contradicted by the evidence of plaintiffs which tends to show that part of the goods, valued at $350, was left at Kansas City. If that is true, defendants are in the position of having promised to comply with the demand, but of having refused to carry out the promise before this suit was brought. Leaving part of the goods behind was, of itself, an act of refusal. Whether or not defendants had broken their contracts by selling goods and failing to account for the proceeds, plaintiffs were entitled to go to the jury on the ground that if a substantial part of the goods was left at Kansas City when Jackson departed for New York with the remainder, such act amounted not only to a refusal of the demand, but also to a wrongful appropriation of the goods in defiance of plaintiffs' right to a prompt return of all of them, which gave plaintiffs a cause of action as for the conversion of all, since they were not bound to accept a partial performance of defendants' duty.

There is another ground on which plaintiffs were entitled to go to the jury. If defendants sold some of the consigned goods and converted the proceeds to their own use, as the evidence tends to show they did, that was a wrongful breach of the terms of the bail-

ments, which amounted in law to a conversion of all the property and dispensed with the necessity for a demand and refusal which were necessary only in case plaintiffs, without cause, decided to terminate the bailments. A demand and refusal are evidentiary and not creative of a conversion (Ward v. Transfer Co., 119 Mo. App. l. c. 90, and cases cited), and are not essential to a cause in conversion where the bailee has exercised an unauthorized dominion over the property to the exclusion and in defiance of the rights of the bailor. [38 Cyc. 2005-2031; Peoples State Savings Bank v. Railway, 158 Mo. App. 519; Wilkinson v. Misner, 158 Mo. App. 551; Ward v. Transfer Co., supra; Allen v. McMonagle, 77 Mo. 478; McLachin v. Barker, 64 Mo. App. 511; Himes v. McKinney, 3 Mo. 382; Huxley v. Hartzell, 44 Mo. 370; Knipper v. Blumenthal, 107 Mo. 665; Newman v. Mercantile Trust Co., 189 Mo. 423; Banking House v. Brooks, 52 Mo. App. 364.]

The conversion of the proceeds of the goods sold which should have been promptly remitted to plaintiffs was a wrong of the same quality and legal consequence as a conversion of the goods themselves. It was the exercise of an unauthorized dominion over the subject of the bailment and afforded good ground for an action as for the conversion of all the unsold goods as well as for the recovery of the proceeds of those which had been sold. No demand is required in such cases.

The learned trial judge erred in giving the peremptory instruction. The judgment is reversed and the cause remanded.

All concur.