SECURITY TRUST COMPANY, Trustee in Bankruptcy of COLUMBIA MOTORS COMPANY, Bankrupt, v. SAMUEL N. LONG, Doing Business as S. N. LONG WAREHOUSE OR A. N. LONG WAREHOUSE COMPANY, Appellant.—16 S. W. (2d) 82.

Division Two, March 2, 1929.

────────────

*William H. Davies* for appellant.

*Luke E. Hart* and *Smith & Pearcy* for respondent.

DAVIS, C.—This is an action in trover for the conversion of five Columbia automobiles. It was originally filed by the Columbia Motors Company, a corporation, but as that corporation was adjudicated a bankrupt, its trustee was substituted as party plaintiff. An order of the bankruptcy court authorized the prosecution of the action by the trustee. The petition, as originally filed, comprised two counts, one for conversion and the other for negligence. Upon motion, the trial court ordered an election and plaintiff elected to stand on the conversion count. The jury returned a verdict assessing damages, including interest, in favor of plaintiff in the sum of $9853.75, of which $7500 represented the value of the automobiles and $2353.75 interest. Judgment was accordingly entered, and defendant appealed.

Defendant neither offered nor introduced evidence. The evidence submitted by plaintiff warrants the finding that the Columbia Motors Company, an automobile manufacturer, shipped and consigned to itself to St. Louis, by shipper's order bill of lading, five Columbia automobiles, with the notation thereon, notify Advance Motors Company. The bill of lading was forwarded to a bank, draft attached, to be delivered to Advance Motors Company upon payment of draft. The shipment arrived at St. Louis June 9, 1920, but as the Advance Motors Company was unable to pay the draft and thus failed to obtain the right to the consignment, the C. & E. I. Railroad, in the possession of which the consignment had remained, on July 20, 1920, under authority of the bill of lading, delivered the automobiles to defendant, a licensed warehouseman, with whom the railroad had been having similar transactions for four or five years previously. Defendant was authorized by the circuit court upon giving bond, in pursuance to the statutes applicable, to do a warehouse business at 828-834 Gratiot Street and 810-812 South Ninth Street in the city of St. Louis, which license was granted in 1904 and was in force on July 20, 1920. Section 5 of the bill of lading provided that, if the property was not removed by the party entitled to receive it within forty-eight hours, the carrier may retain custody of the property as warehouseman, or it may be removed to and stored in a public or licensed warehouse. Plaintiff's additional abstract of the record tends to show that the automobiles were stored with defendant under

Section 5 of the bill of lading. Plaintiff's exhibit tends to show that the automobiles were stored with defendant as a warehouseman, as defined in the Uniform Warehouse Receipts Act of the State of Missouri, at 1605 South Twelfth Street, and received in storage from "C. & E. I. To whom it may concern." The evidence tends to show that the automobiles were delivered to defendant at his licensed warehouse. There is no controversy as to the facts that in 1904 defendant was licensed to transact business as a warehouseman at the locations mentioned, and it was admitted at the trial that defendant never obtained a warehouse license for any other place.

The places of storage and the conditions under which the automobiles were stored at 1605 South Twelfth Street and on Geyer Avenue later are respectively shown by the evidence of Richard Hart, treasurer of the Advance Motors Company, reading:

"Just a frame building and it was in a very bad state of repair; the roof leaked and there were several places in the walls that could easily be seen through. The roof sagged in places and it had been partially destroyed by fire and propped up in two or three different places. There was a large accumulation of dust and manure on the floor of the place, so that the cushion of one of the cars that was down on the floor was completely covered with this dust and manure. And one of the steel wheels of the roadster was in the same condition. The tops of some of the touring cars were down and rain had come in on the upholstering and damaged it, and the tires were flat. Two wheels were off of the cars entirely. Some of the roller bearings were gone. And the cars had been frozen so that the radiators leaked. And some of the blocks were cracked and the freeze-out plugs blown out of the motors. They were scratched up and the finish was in a very bad condition.

"Q. Now, then, did you visit the Geyer Avenue place where those automobiles were later stored? A. I did.

"Q. Will you please describe to the jury what kind of a building that is and what condition you found the automobiles in there? A. That is a one-story brick building and the roof to this building leaked. It was leaking at the time that we were there and made the inspection, and the water was at that time dripping down on the roadster and on the coupe and on the back seat of one of the touring cars that had the top down. And there was water all over the floor."

Although defendant offered no evidence, his attorney made an opening statement to the jury in which he assigned as the reason for storing the automobiles in the stable and on Geyer Avenue the jammed to overflowing condition of the bonded warehouse. Other pertinent facts, if any, will appear in the course of the opinion.

I. The action is based on and arises out of a contract of bailment. Consequently it is not claimed that the original taking was tortious,

but it is said that defendant violated the contract of bailment, first, by storing the automobiles in other than a licensed warehouse, and, second, by misusing and abusing the cars by storing them in unwarranted and hazardous places.

The evidence tends to show that the automobiles were stored with defendant under the bill of lading, which provided for their storage in a public or licensed warehouse. Defendant was in possession of and operated such a warehouse, where he was authorized as a warehouseman to do business only, and the automobiles were delivered to him at his warehouse. In accepting the automobiles for storage, he impliedly agreed to place them there, but instead of so doing, he stored them first in an old frame stable, and second in a one-story brick building, neither of which places was suitable for the storage of automobiles. We think that in taking and accepting the automobiles for storage defendant impliedly, if not expressly, agreed to store them in a licensed warehouse, and that such agreement was within the contemplation of the parties. Their storage at any other place or in any other building than a licensed warehouse was a violation of the agreement, and subjected defendant to liability for conversion. When defendant stored the automobiles in the frame stable, which was not a licensed warehouse, he exceeded his authority, as much so as did the bailee of the horse when he drove beyond the limits of his contract of hiring. The storage in the frame stable probably deprived plaintiff of the benefit of the storage bond, to which benefit such storage in a licensed warehouse would have attached. The fact that his licensed warehouse was stored with other property to its capacity did not justify the storage of the automobiles in unwarranted structures. If he was unable to carry out the terms of the bailment, he should have refused to accept them. The fact that the receipt showed that the goods were stored at 1605 South Twelfth Street, that is, in a stable as the evidence later shows, cannot be urged to defeat plaintiff's claim, for various reasons. First, the receipt is addressed to "C. & E. I. To whom it may concern," and it is not shown that plaintiff knew of or waived the place of storage; second, even if it could be said that the railroad consented to the storage, it was in violation of the terms of the bill of lading, of which defendant had notice; third, the answer admits that there was delivered to defendant at his warehouse at 828-834 Gratiot Street and 810-812 South Ninth Street in said city, the five automobiles described in said fourth amended petition for storage. [38 Cyc. 2025-2026; 6 C. J. 1111, sec. 42; Kennedy v. Portman, 97 Mo. App. 253, 70 S. W. 1099; Kellar v. Garth, 45 Mo. App. 332.] We have examined the cases of Scott-Mayer Com. Co. v. Merchants' Grocer Co. (Ark.), 226 S. W. 1060; Barnett v. Tonnies (Mo. App.), 180 S. W. 1000, and Staley v. Colony Union Gin Co. (Tex.), 163 S. W. 381,

cited by defendant, but we do not think the opinions are based on analogous facts. However, they announce the rule which we have enunciated as applicable to the facts here developed.

II. The storage of the automobiles in the frame stable and the one-story brick building, which the evidence develops lacked facilities for the proper care and attention of the cars, was a misuse and abuse of the bailment, and showed an unauthorized assumption of control over the property, which amounted to a conversion. The invasion of the owner's right of property is as complete when the bailee goes beyond his license and duty as if the control over the property was usurped without any bailment. In this regard it is said in Empire Refineries v. Guaranty Trust Co., 271 Fed. 668, l. c. 669: ''The bailee is liable for loss resulting from breach of his contract to keep the property in a particular manner or at a particular place, or to use it for a particular purpose or to a specified extent, or in a particular manner, or to return it at a particular time, or other special stipulation in regard to the property, without regard to whether he has been negligent.'' The placing of the automobiles in an unheated stable, at the mercy of the elements, as the evidence tends to show, was an unwarranted use and an abuse of the bailment. [Bowers on Conversion, sec. 308, p. 225; 38 Cyc. 2025-2026.]

III. It is said that the condition of the automobiles when delivered to defendant was not established, for they had been in the possession of the carrier in the railroad yards for approximately seven weeks. It was shown that the Columbia Motors Company was the manufacturer of the automobiles and that the Advance Motors Company was in the business of selling its product. It may be inferred from this evidence that the automobiles were new when delivered to the carrier. Slight damage was shown, such as a radiator cap short, a bearing broken, a radiator scratched, a gas tank bent, two ribs broken on top, and a fender and a hood dented, when delivered to defendant, but these items were before the jury and we may assume they considered such damage in reaching a verdict. This was evidence from which it may be inferred that, save the exceptions noted, the automobiles were in the same condition as they were when delivered to the carrier. Defendant did not undertake to show otherwise.

IV. It is said that, because freight charges, demurrage and storage were due on the automobiles amounting to $280.53, the plaintiff's right to possession was not established, thus controverting a conversion. In other words it is said that the property was subject to a lien for the charges. That was true, but by converting the property, defendant waived its lien. By the act of

conversion, if plaintiff so elected to treat the act of dominion, defendant became the owner of the property and thus liable to pay its reasonable value, and it results that the minor title, that of the lien, became merged in the major, that of ownership. [37 C. J. 338, sec. 58; Bowers on Conversion, secs. 114 and 308; Kirtley v. Morris, 43 Mo. App. 144; Munson v. Porter, 63 Iowa, 453; Walker v. Produce Co., 106 Iowa, 245; Andrews v. Wade, 6 Atl. 48.]

V. It is averred that conversion will not lie because no demand was made for the property. It would have been idle and unavailing to have demanded the property, for, as it had been misused and abused, it could not have been redelivered in its original condition. Under the circumstances a demand was not a necessary incident to the institution of the action. [3 R. C. L. 119; Siff v. Jackson, 187 Mo. App. 141, 172 S. W. 1169.]

The judgment is affirmed. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.