McCUNE & McCUNE, a general partnership; George M. McCune, an individual; James P. McCune, an individual; and Arlene C. McCune, an individual, Petitioners,

v.

MOUNTAIN BELL TELEPHONE, an assumed name of Mountain States Telephone and Telegraph Company, a public service telephone corporation, Respondent.

McCUNE & McCUNE, a general partnership; George M. McCune, an individual; James P. McCune, an individual; and Arlene C. McCune, an individual, Petitioners,

v.

PUBLIC SERVICE COMMISSION OF UTAH, Respondent.

No. 860049.

Supreme Court of Utah.

July 19, 1988.

---

**20.** *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539.

**21.** 752 P.2d 356 (Utah Ct.App.1987), *cert. denied.*

**22.** *Id.* at 358.

George M. McCune, Salt Lake City, pro se and for petitioners.

Floyd A. Jensen, Salt Lake City, for Mountain States Tel. & Tel. Co.

David L. Stott, Salt Lake City, for Public Service Com'n.

ZIMMERMAN, Justice:

Petitioner George M. McCune filed a complaint with the Public Service Commis-

sion ("the Commission") contending that Mountain Bell Telephone ("Mountain Bell") had exceeded its lawful authority under the applicable filed tariff when, in an attempt to collect an unpaid business partnership debt for telephone service, it first transferred the amount of the debt directly to one general partner's residence service account and later to another general partner's individual business account without having first sought satisfaction of the debt from the partnership's assets. The Commission dismissed his complaint with prejudice. McCune brings this petition for review. We hold that the Commission properly dismissed as moot McCune's challenge to the transfer of the partnership debt to the general partner's residence account. However, Mountain Bell's transfer of the partnership debt to the other general partner's individual business account was in violation of general partnership law and was not authorized by the tariff on which Mountain Bell relied. Accordingly, we reverse that portion of the Commission's ruling.

George M. and James P. McCune did business as McCune & McCune, a general law partnership. Mountain Bell provided telephone service to McCune & McCune through November of 1983, when the partnership was dissolved. Upon dissolution, the partnership's telephone service was discontinued, leaving an unpaid balance due of $317.29.

In June of 1984, Mountain Bell, purportedly acting pursuant to a tariff filed with the Public Service Commission, transferred the unpaid partnership debt to James McCune's individual residence account. When he failed to pay the account in full, Mountain Bell disconnected his service. Subsequently, however, Mountain Bell learned that the tariff provision on which it had relied in transferring the partnership debt had been changed and no longer permitted the transfer of business account debts to residence accounts.[1] In accord-

---

1. Prior to December 1983, the tariff allowed Mountain Bell to transfer a business service account debt to the residence service account of the same customer. *See infra* note 2. In De-

cember 1983, however, the applicable tariff provision was changed to read as follows:
   In the event a customer is indebted to the Company for charges and services previously

ance with the tariff then in force, Mountain Bell removed the partnership debt from James McCune's individual residence account and restored his service.

Mountain Bell then transferred the partnership's outstanding balance to the individual business account of the other partner, George McCune.[2] George McCune refused to pay the transferred debt and filed suit against Mountain Bell in district court to enjoin the disconnection of his business service account and to recover damages. Upon stipulation of the parties, that action was stayed to allow McCune to file a complaint with the Public Service Commission to determine the validity and applicability of the tariff provision giving Mountain Bell authority to cross-bill customer accounts. The Commission found the disconnection of James McCune's residence service moot. As for George McCune's challenge to the transfer of the partnership debt to his business account, the Commission concluded that Mountain Bell's actions were authorized by the tariff.

■ On petition for review, George McCune challenges the Commission's ruling on several grounds. First, he argues that the Commission erred in holding moot the disconnection of James McCune's residence telephone service because the question of damages for wrongful disconnection remains. We disagree. It is the district court, not the Commission, that has jurisdiction to consider claims for damages for wrongful disconnection or other torts committed by a public utility. *See, e.g., Atkin, Wright & Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 334 (Utah 1985). At most, the Commission may order the restoration of service and the removal of any improper charges. *See* Utah Code Ann. §§ 54–7–20, –24 (1986). At the time the complaint was filed with the Commission, James McCune's residence telephone service had been restored and the partnership debt removed from his account. Because all possible remedies within the Commission's power already had been given by Mountain Bell, the Commission properly held the disconnection of James McCune's residence service moot.

Second, George McCune argues that Mountain Bell's tariff allowing cross-billing of unpaid telephone service debts is invalid as applied to him. The tariff provision at issue, Utah Exchange and Network Services Tariff § A2.2.3.2(3) (1985), purports to allow Mountain Bell to transfer unpaid bills for services rendered on any one of a customer's service accounts to any other service account of the same customer. If the bill then remains unpaid, Mountain Bell may, under other tariff provisions, suspend service on the account to which the debt was transferred. *See* Utah Exchange and Network Services Tariff §§ A2.2.3.2(7)–(9) (1987). These tariffs obviously are designed to provide Mountain Bell with a simplified method of pressuring customers to pay past-due bills by ultimately permit-

---

rendered in Utah, or for service under one or more numbers at the same location, and the customer does not pay the charges or satisfy such indebtedness, the Company may charge and bill such indebtedness for a residence account against the same customer's residence service or a business account against the customer's business service.

Utah Exchange and Network Services Tariff § A2.2.3.2(3) (1983). With this change, Mountain Bell had the authority to transfer a customer's debt between like accounts only.

2. After the partnership debt was removed from James McCune's residence service account, Mountain Bell amended the tariff provision to read as it had prior to December 1983. The amended tariff once again allowed Mountain Bell to transfer a business service account debt to the same customer's residence account. The amended tariff provision reads:

In the event a customer is indebted to the Company for charges and services rendered at a prior time, of any nature, or for service at more than one number or location, and the customer does not pay the charges or satisfy such indebtedness, the Company may charge and bill such indebtedness against the account of the customer's present service or to the account of either service in the case where more than one number or location is being served.

Utah Exchange and Network Services Tariff § A2.2.3.2(3) (1985). However, under either version of the tariff provision, Mountain Bell is authorized to transfer a business service account to any other business service account of the same customer. Thus, for the purposes of George McCune's challenge to the Commission order, the changes in the tariff provision are inconsequential.

ting the company to suspend all services to one who refuses to pay any past-due account. Because almost everyone has or wants telephone service, this is a powerful sanction. McCune contends that under the circumstances of this case, Mountain Bell's transfer of the partnership debt to his individual business account operates to enlarge Mountain Bell's rights beyond what is permitted by general partnership law; specifically, partnership law requires that partnership assets be marshalled and exhausted before a partnership creditor can reach a partner's individual assets.

■ The first question before us is the standard of review to be applied in considering the Commission's decision. To the extent that the challenged action involves the Commission's interpretation of general law as it interfaces with a tariff provision, this Court applies a "correction-of-error" standard of review, giving no deference to the expertise of the Commission. *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 608 (Utah 1983). However, we give considerable weight to the Commission's interpretations of technical provisions such as tariffs; those interpretations need only fall within the limits of reasonableness or rationality. *See id.* at 610–12.

■ The applicable general law is relatively clear. Under the Utah Uniform Partnership Act, partners are jointly, rather than jointly and severally, liable for all debts and obligations of the partnership not arising from tort or breach of trust. Utah Code Ann. §§ 48–1–10, –11, –12 (1982); *Palle v. Industrial Comm'n,* 79 Utah 47, 55, 7 P.2d 284, 288 (1932); *see* 59A Am.Jur.2d *Partnership* § 639 (1987). If a debt is contractual in origin, common law requires that the partnership's assets be resorted to and exhausted before partnership creditors can reach the partners' individual assets. *See Murphy v. Gutfreund,* 624 F.Supp. 444, 448 (S.D.N.Y.1985); *Brown v. Bateh,* 331 So.2d 671, 677 (Ala.

1976); *Horn's Crane Serv. v. Prior,* 182 Neb. 94, 95–97, 152 N.W.2d 421, 423 (1967); 59A Am.Jur.2d *Partnership* § 1205 (1987); 68 C.J.S. *Partnership* § 185 (1950). The Utah courts have never determined whether this common law exhaustion-of-partnership-assets requirement survives under the Utah Uniform Partnership Act. *See Palle,* 79 Utah at 55–56, 7 P.2d at 288. However, it appears to be generally accepted that the uniform act does not disturb this rule and may, in fact, embrace it. *See* 59A Am.Jur. 2d *Partnership* §§ 1200–02, 1204, 1205 (1987); *cf. Hamner v. Ballantyne,* 16 Utah 436, 438–39, 52 P. 770, 770 (1898) (discussing limitation of liability to partnership assets under section 3191, Compiled Laws of Utah 1888). The salutary purpose of this common law rule is to preserve fairness among the members of a general partnership. *Horn's Crane Serv.,* 182 Neb. at 96–97, 152 N.W.2d at 423. Therefore, we conclude that partnership debts and obligations coming within the scope of section 48–1–12(2) must be satisfied by partnership assets to the extent any exist before a creditor can seek satisfaction from the individual assets of a partner.

On its face, Mountain Bell's tariff provision does not even address this common law rule, much less abrogate it. However, Mountain Bell's actions in this case, which were taken in reliance on the tariff, produced a result that is in conflict with the rule requiring that partnership assets be pursued first. Nothing in the record suggests that Mountain Bell established that the partnership's assets had been exhausted before it attempted to collect the partnership debt from one partner's individual assets. The record only shows that the partnership had been dissolved. Nothing indicates that there had been a winding up of the partnership or that its assets had been distributed to the partners. Despite the partnership's dissolution, it does not cease to exist "until the winding up of partnership affairs is completed." Utah Code Ann. § 48–1–27 (1982).[3]

---

**3.** The failure of Mountain Bell to pursue partnership assets initially appears to be explained by 1984 correspondence between legal counsel for Mountain Bell and Mr. McCune in which

Mountain Bell took the position that there was no Utah case that required a creditor to exhaust partnership assets before pursuing an individual

Before the Commission and this Court, Mountain Bell suggests that its actions do not really implicate the general partnership law. It takes the position that under the language of the tariff, any "customer" who is "indebted" to the company is subject to having the past-due debt transferred to any other service accounts with the company. Mountain Bell argues that McCune is a "customer" who is "indebted" to Mountain Bell. That logic was adopted by the Commission. The difficulty with this position is that it permits Mountain Bell to determine what "indebted" means, without regard for the general law applicable to any particular situation. As interpreted by Mountain Bell, "indebted" means only that the amount due is legally ripe for collection from someone and, therefore, that Mountain Bell can pursue any of the partners as debtors. It is true that under general partnership law, all partnership debts are joint debts of the partners and that all partners are ultimately liable for those debts. However, a creditor's right to proceed against the individual partners is conditioned on having first proceeded against the partnership assets for satisfaction of the debt, something Mountain Bell did not do in this case. Therefore, Mountain Bell claims the right to do under the tariff precisely what it could not otherwise do legally—pursue a partner's assets first.

The tariff, as Mountain Bell and the Commission interpret it, operates so as to create a direct conflict with general partnership law. As noted previously, we accord the Commission's interpretations of tariffs considerable deference and review them for mere reasonableness or rationality. *See Utah Dep't of Admin. Servs. v.*

*Public Serv. Comm'n,* 658 P.2d at 610–12. One of the requirements for a finding of reasonableness is lawfulness; a minimally reasonable interpretation must avoid unnecessarily contravening general law. *See Josephson v. Mountain Bell,* 576 P.2d 850, 852 (Utah 1978). Nothing in the tariff suggests that it was intended to override the well-settled general law of partnerships and give Mountain Bell the right to treat a partnership debt as an individual partner's debt. Under these circumstances, we cannot find that the Commission's contrary interpretation meets the requirement of reasonableness.

We conclude that Mountain Bell's attempt to recover the partnership debt from one of the partners without first exhausting partnership assets was in conflict with general legal principles and was not authorized by the tariff. Therefore, the Commission's decision regarding the transfer of the partnership debt to McCune's individual business account is reversed.[4]

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

---

partner's assets. That may be true, but the principle involved is hornbook law.

**4.** Although we are compelled to reverse the Commission's decision, we note that McCune's actions in avoiding payment of a just debt through these proceedings certainly do not reflect well on him or on the legal profession. We agree with the Commission that

> [f]or a member or members of the Utah State Bar to use, or we might say, abuse the "system" over an uncontested $317.29 [two-year-old] debt, is absurd.

The expense to the regulated utility (billing, collection, legal, etc.) and the expense to the state regulatory agency (Administrative Law Judge, court reporter, clerical, Commission review, etc.), which is ultimately born by the rate-paying citizens of this state, could well exceed $5,000.

> ... No matter how valid the [complainants] feel their cause is, as a strictly legal matter, we believe that it is unconscionable for members of the Bar to abuse the system to this extent....

P.S.C. Report and Order, No. 85-049-03, Nov. 15, 1985.