Dale JENKINS, Plaintiff and Appellee,

v.

EQUIPMENT CENTER, INC., a Utah corporation; and Hesston Corporation, a foreign corporation, Defendants and Appellant.

No. 910742–CA.

Court of Appeals of Utah.

Feb. 16, 1994.

---

Richard K. Chamberlain (argued), Olsen, McIff & Chamberlain, Richfield, for appellant.

Marcus G. Taylor (argued), Labrum & Taylor, Richfield, for appellee.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

## OPINION

DAVIS, Judge:

Appellant Equipment Center, Inc. appeals a final judgment in which the trial court ordered Equipment Center to pay damages for converting a tractor belonging to appellee Dale Jenkins. Jenkins cross-appeals, claiming the damages award was not supported by the evidence. We affirm the judgment for conversion and reverse and remand the award of damages.

## FACTS

We draw the facts from the court's findings, both written and oral, and from their reasonable inferences. In addition, given that Jenkins marshaled the evidence regarding the trial court's assessment of damages, we consider all evidence supporting the findings on this issue. See Ong Int'l, Inc. v. 11th Ave. Corp., 850 P.2d 447, 454 n. 25 (Utah 1993).

Jenkins and Equipment Center had a business relationship over the years wherein Equipment Center sold farm equipment, including two tractors, to Jenkins. Equipment Center also provided parts and labor to service the equipment. In the course of business between these parties, Jenkins often owed money to Equipment Center on an open account.

In June 1985, Jenkins bought a 1380 Hesston tractor, the subject of the present dispute, from Equipment Center. Jenkins paid $45,000 for the tractor. At the time Jenkins purchased the tractor, his Equipment Center account was delinquent.

For the next three years, Jenkins used the tractor for ordinary farming purposes. Then, in March and April of 1988, Jenkins brought the tractor to Equipment Center for repair of the main engine bearings. At this time, the tractor had approximately 1900 hours of use. Because the tractor was still under warranty from defendant Hesston Corporation, Equipment Center communicated with Hesston to determine whether the warranty would cover the needed repairs. Equipment Center removed the main bearings and sent them to Hesston, which concluded that the warranty would not cover repair of the damaged bearings. After Equipment Center provided further information to Hesston, it again concluded that the warranty would not cover the repair.

On July 8, 1988, Jenkins's counsel sent a letter to Equipment Center demanding that it repair the tractor and return it. On July 26, 1988, Equipment Center informed Jenkins that it would not release the tractor until Jenkins had paid off his open account balance as well as the repair bill for the tractor.

Hesston's agent wrote to Jenkins's counsel on August 17, 1988, stating: "It is our understanding that Equipment Center, Inc., refused to release the tractor to Mr. Jenkins because of his unpaid open account and this repair bill of $3,121.33." Hesston then made the following offer:

We as a company do not feel we have any responsibility in what happened, however, we would like in this specific situation, to make a good will gesture to our customer offering to pay for ⅓ of his repair bill that would be equal to the amount of $1,040.00.

Jenkins sued Equipment Center for wrongful conversion of his tractor. After a bench trial, the trial court found that (1) a reasonable time for Equipment Center to

keep the tractor for repairs would be a month; (2) Equipment Center had a duty to have it repaired within that time; (3) Equipment Center neglected to repair the tractor until Jenkins made a formal demand for it in July 1988; and (4) although Equipment Center completed the repairs by July 26, 1988, it continued to wrongfully hold possession of the tractor until August 10, 1989, when Jenkins posted a bond with the trial court.[1]

The trial court found that a "tender of the amount to satisfy the repair bill, and a demand for release of the tractor based thereon, would have been useless in light of the position of Equipment Center, Inc., thus excusing [Jenkins] from any need to do so." The trial court based this determination on the following: the invoice for the repairs stated that Equipment Center would not release the tractor until Jenkins had paid for the repairs along with amounts due on the open account; Equipment Center's counsel reiterated those same terms to Jenkins's counsel and to Hesston Corporation; and Equipment Center demanded assignment of a milk contract from Jenkins as additional security for the amounts owed. The trial court also ordered defendant Hesston to stand by its offer to pay $1040 toward Jenkins's repair expenses.

The evidence regarding the measure of damages for the converted tractor was provided by Jenkins and Bart K. Lee, a farm equipment dealer. Jenkins testified regarding his normal seasonal use of the tractor and his actions to compensate for deprivation of the tractor during the time Equipment Center had possession thereof. Lee testified regarding the monthly rental value of comparable tractors. Lee noted that Jenkins paid $45,000 for the tractor in 1985, that the parties stipulated that it had a 123-horsepower engine, and that it had been used 1941 hours at the time of service.

Lee relied on his experience and on the North American Equipment Dealers Association Guide for Farm Equipment Values, a national pricing guide used locally. This guide gave both retail and rental values for

comparable tractors. Lee noted that a tractor's horsepower rating was the primary determinant of rental value. He testified that the guide based rental value on time of possession rather than actual use or purpose, and that daily and weekly rates were cumulatively more expensive than monthly rates.

Lee discussed eleven comparable rental values involving tractors with similar model years and horsepower ratings. Based on these rental values, Lee opined that the monthly rental value for a comparable tractor would range from a low of $1890 to a high of $2475, with the average monthly rental value being $2233.

Even so, the trial court found "that the measure of damages on reasonable value is $1,500 per month." The trial court concluded that Equipment Center converted the tractor for fourteen months and that the conversion caused Jenkins damages of $21,000. The trial court offset these damages by the amount Jenkins owed Equipment Center on the open account and the tractor repair, and Hesston's offer of $1040. Thus, Equipment Center ended up owing Jenkins $13,233.08, together with costs. Equipment Center appealed and Jenkins cross-appealed.

## TENDER REQUIREMENT

■ Equipment Center claims it held a valid lien on the tractor and that the trial court erred in determining that Jenkins's tender of the amount owed on his open account was excused. Equipment Center claims that at the least, Jenkins had a duty to tender the repair amount.

Utah law provides that one who, at the owner's request, repairs an article of personal property "shall have a lien upon such article for the reasonable value of the labor performed and materials furnished and used in ... repairing the same, and may retain possession thereof until the amount so due is paid." Utah Code Ann. § 38–2–3 (1988).

"Generally, where a lien on, or an indebtedness for, goods exists in favor of one in possession of them, a tender of the amount of

---

1. Apparently, Jenkins ultimately obtained release of the tractor by posting a bond pursuant to Utah

Code Ann. § 38–2–4 (1988).

such lien or indebtedness must be made before trover will lie." 89 C.J.S. *Trover & Conversion* § 80, at 578 (1955); *see also Alta Indus. Ltd. v. Hurst,* 846 P.2d 1282, 1290 n. 18 (Utah 1993) ("Conversion requires 'an intent to exercise dominion or control over goods inconsistent with the owner's rights.'") (quoting *Allred v. Hinkley,* 8 Utah 2d 73, 328 P.2d 726, 728 (1958)).

To make a valid tender, the obligor must make a bona fide, unconditional, offer of payment of the amount of money due coupled with an actual production of the money or its equivalent. Utah Code Ann. § 78–27–1 (1992); *Zion's Properties, Inc. v. Holt,* 538 P.2d 1319, 1322 (Utah 1975); *Washington Nat'l Ins. Co. v. Sherwood Assocs.,* 795 P.2d 665, 670 (Utah App.1990) (citing *Carr v. Enoch Smith Co.,* 781 P.2d 1292, 1292 (Utah App.1989)).

However, tender is excused where "it is plain and clear that a tender, if made, 'would be an idle ceremony and of no avail.'" *Fitzgerald v. Corbett,* 793 P.2d 356, 359 (Utah 1990) (quoting 74 Am.Jur.2d *Tender* § 4 (1974)); *accord Hansen v. Christensen,* 545 P.2d 1152, 1154 (Utah 1976) (tender excused where obligee's unreasonable conduct "would make an actual tender a fruitless gesture"). Other states have found tender to be fruitless and thus excused where the lienor states that he or she does not intend to accept payment, *see, e.g., Loomis v. Imperial Motors, Inc.,* 88 Idaho 74, 396 P.2d 467, 468 (1964); *Great Plains Life Ins. Co. v. First Nat'l Bank of Lubbock,* 316 S.W.2d 98, 105 (Tex.Civ.App.1958); *Wallace v. Renfroe,* 124 S.W.2d 456, 459 (Tex.Civ.App.1939); where the lienor claims a larger sum than he or she is entitled to collect, *see, e.g., Murr v. Western Assur. Co.,* 50 A.D. 4, 64 N.Y.S. 12, 18 (1900); *Artman v. Ray,* 263 Or. 529, 501 P.2d 63, 64 (1972); and where the lienor has coupled the legitimate claim with another claim, *see, e.g., Bowden v. Dugan,* 91 Me. 141, 39 A. 467, 467–68 (1898).

■ Generally, a tender must be made of the amount actually due. *See Simons v. Brashears Transfer and Storage,* 344 P.2d 1107, 1112 (Okla.1959). "But if the demand of a larger sum is so made that it amounts to an announcement that it is useless to tender a smaller sum, it dispenses with any tender and amounts to a waiver of the lien." *Id.*

Here, the trial court determined that a "tender of the amount to satisfy the repair bill, and a demand for release of the tractor based thereon, would have been useless in light of the position of [Equipment Center] thus excusing [Jenkins] from any need to do so."

Absent an agreement to the contrary, Equipment Center was clearly wrong to hold the tractor for the amount of repairs as well as for the amount due on the open account. The question then is whether the trial court correctly determined that Equipment Center was so adamant in its position that a tender would have been a "fruitless gesture," or whether Jenkins should have tendered at least the amount due for repair of the tractor.

The question of whether a tender would have been fruitless is fact-intensive. *See, e.g., Hansen,* 545 P.2d at 1154. Thus, we defer to the trial court's findings. *See* Utah R.Civ.P. 52(a). The trial court supported its determination that a tender would have been fruitless by the following findings: (1) Equipment Center did not complete repairs on the tractor until nearly three months after it received the tractor; (2) Equipment Center should have completed the repairs within a month; (3) the invoice for the repairs stated that Equipment Center would not release the tractor until Jenkins had paid for the repairs along with amounts due on the open account; (4) Equipment Center's counsel reiterated those same terms to Jenkins's counsel; (5) Equipment Center reiterated those same terms to Hesston; and (6) Equipment Center demanded assignment of a milk contract from Jenkins as additional security for the amounts owed.

Given the trial court's findings regarding the degree to which Equipment Center was entrenched in its position, we affirm the determination that tender was excused because it would have been useless.

## MEASURE OF DAMAGES

■ Jenkins claims the trial court clearly erred in setting its damages award because it

was based on insufficient findings and evidence. Equipment Center does not respond to this claim on appeal. Specifically, Jenkins challenges the trial court's finding that "the fair monthly rental value of said tractor was the sum of $1,500.00."

The Utah Supreme Court and this court have stated that generally, the measure of damages in a conversion action is the value of the property at the time of the conversion, plus interest. *Madsen v. Madsen,* 72 Utah 96, 269 P. 132, 134 (1928); *Henderson v. For–Shor Co.,* 757 P.2d 465, 468–69 (Utah App.1988). " 'The damages in an action for conversion are measured by the sum of money necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong.' " *Henderson,* 757 P.2d at 469 (quoting 18 Am.Jur.2d *Conversion* § 177 (1985)). "Generally, damages for interference with the plaintiff's right to use the property are measured by the rental value of the item involved or by the reasonable cost of hiring a replacement item." *Id.* (approving fair rental value of cement forms as measure of damages for conversion where defendant knew plaintiff generated income from renting forms) (citing 22 Am.Jur.2d *Damages* §§ 152, 176 (1965)).

"However, rules relating to the measure of damages are flexible, and 'can be modified in the interest of fairness.' The primary objective in rendering an award of damages for conversion is to award the injured party full compensation for actual losses." *Id.* (quoting *Winters v. Charles Anthony, Inc.,* 586 P.2d 453, 454 (Utah 1978)).

Jenkins argues that the only evidence before the trial court established the monthly rental value for comparable tractors ranging from a low of $1890 to a high of $2475, with the average monthly rental value being $2233. Jenkins's expert, Lee, admitted that in computing the fair rental value of a tractor, he did not consider Jenkins's seasonal use of the tractor. Nor did Lee consider what Jenkins actually expended to compensate for the converted tractor.

Although Jenkins claims that Equipment Center presented no evidence on the issue of damages, Equipment Center did elicit evidence regarding Jenkins's normal, seasonal use of the tractor and Jenkins's actions to compensate for deprivation of the tractor during the time Equipment Center converted the tractor.

Even so, given the evidence before the trial court including: (1) Lee's testimony regarding the commercial rental rates for comparable tractors; (2) Jenkins's actual usage of the tractor; and (3) Jenkins's actions to compensate for deprivation of the tractor, we are unable to determine how the trial court decided upon $1500 as the monthly rental value of the tractor.

We conclude that the trial court's subsidiary findings are inadequate to support its ultimate finding that the monthly rental value of the tractor would be $1500. We therefore remand for the trial court to award damages to Jenkins based upon a monthly rental value between $1890 and $2475.

## CONCLUSION

Because the trial court made several subsidiary findings to support its finding that a tender would have been useless and was therefore excused, we affirm its determination. We reverse the trial court's damages award and remand for the entry of an award consistent with this opinion.

BILLINGS and GREENWOOD, JJ., concur.