1999 UT App 031

Peter LYSENKO, Plaintiff and Appellant,

v.

Mitchell J. SAWAYA and Lillie Marie Sawaya, Defendants and Appellees.

No. 981011–CA.

Court of Appeals of Utah.

Feb. 4, 1999.

Leslie W. Slaugh, Howard, Lewis & Peterson, Provo, for Appellant.

Stephen B. Mitchell, Burbidge & Mitchell, Salt Lake City, for Appellees.

Before Judges WILKINS, DAVIS, and ORME.

WILKINS, Presiding Judge:

¶ 1 Appellant Peter Lysenko (Lysenko) challenges the trial court's order limiting his damages for conversion to the salvage rather than the in-place value of his restaurant equipment. We affirm.

## BACKGROUND

¶ 2 On May 22, 1978, Mitchell and Lillie Sawaya (Sawayas), leased property (premises) located in Orem, Utah, to the Burger King Corporation. The lease allowed Burger King to build a restaurant on the premises. In addition, the lease provided that any additions or improvements made to the premises would become the property of the Sawayas if not removed within fifteen days after the lease ended. Subsequently, Burger King built a restaurant on the premises and on February 6, 1979, entered into a sublease agreement with Lysenko. The sublease stated that Burger King's ownership of improvements made to the premises was subject to its lease with the Sawayas. The sublease further provided that all personal property installed by Lysenko would remain his property after the lease ended. Shortly thereafter, Lysenko purchased the necessary restaurant equipment (equipment) and opened for business. Lysenko financed his purchase of the equipment through a loan from Central Bank and Trust (bank).

¶ 3 In January 1993, the bank filed a UCC–1 Financing Statement which was secured by the Burger King Restaurant and included all equipment, fixtures, furniture, signs, improvements, accessories, extensions and additions related to the restaurant. When Lysenko defaulted in February 1993, Burger King terminated Lysenko's franchise and sublease agreements. Thereafter, Lysenko arranged for Curtis Loosli, a former employee of Lysenko, to purchase the bank's security interest in the equipment. The bank then sold its rights in the equipment subject to the security interest to Loosli, who in turn conveyed ownership of the equipment to Lysenko.

¶ 4 In November 1993, the Sawayas' attorney informed Lysenko, the bank, and Burger King that all improvements, personal property, and equipment were to be removed within fifteen days of February 6, 1994, pursuant to the lease agreement between the Sawayas and Burger King, or it would be forfeited to the Sawayas. However, on January 26, 1994, the Sawayas' attorney acknowledged that Lysenko's claim to the restaurant equipment was subject to the claims of Burger King and the bank and that, based on Burger King's claim of ownership of the building and equipment, the Sawayas were not in a position to allow Lysenko to enter the premises and remove any equipment. Nevertheless, Lysenko informed the Sawayas he would begin removing the equipment on February 11, 1994, and requested that someone be present to unlock the building. The Sawayas refused Lysenko's request.

¶ 5 Lysenko brought suit arguing the Sawayas had unlawfully converted his equipment and therefore, he was entitled to possession of the equipment or its equivalent value. At trial, the court admitted expert testimony regarding the equipment's value. In its memorandum decision, the court stated that Lysenko had a perfected security interest in the equipment entitling him to possession, and that by interfering with Lysenko's attempts to recover his equipment, and receiving some benefit from the possession and continued use of that equipment, the Sawayas had committed conversion. The court awarded Lysenko the salvage value of the equipment in the amount of $12,980, plus interest and costs. The trial court entered Formal Findings of Fact and Conclusions of Law on March 21, 1997, and also entered a Judgment the same day. Thereafter, Lysenko filed a Motion for Amendment to the Findings and Judgment, or alternatively, for a new trial, which the court denied. The trial court entered a final order denying the motion on August 20, 1997. Lysenko now seeks review of the court's order limiting his damages for conversion to the equipment's salvage value.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Lysenko raises two issues on appeal. First, Lysenko contends the trial court erred by failing to grant him possession of the equipment. Second, Lysenko asserts the trial court erred in basing his damage award on the salvage rather than the in-place value of the equipment. We review the trial court's decision to award damages under a standard which gives the court considerable discretion, and will not disturb its ruling absent an abuse of discretion. *See Thurston v. Box Elder County*, 892 P.2d 1034, 1041 (Utah 1995). Furthermore, because the adequacy of a damage award is a factual question, we will not reverse the trial court's findings unless they are clearly erroneous. *See* Utah R. Civ. P. 52(a); *In Re Knickerbocker*, 912 P.2d 969, 981 (Utah 1996).

## ANALYSIS

### I. Possession of the Equipment

¶ 7 First, Lysenko challenges the trial court's award of damages rather than possession of the equipment. Lysenko argues because he had a valid security interest in the equipment entitling him to take possession thereof, the trial court erred in awarding damages instead of possession. We disagree. In *Clayton v. Crossroads Equip. Co.*, 655 P.2d 1125 (Utah 1982), the Utah Supreme Court addressed a similar issue. There, the defendant wrongfully repossessed a piece of farm equipment in which it held a valid security interest. *See id.* at 1127–28. The plaintiff sought damages and possession of the wrongfully possessed equip-

ment. *See id.* at 1126. The lower court granted the defendant possession of the equipment and awarded damages to the plaintiff. *See id.* On appeal, the supreme court affirmed the lower court's decision and stated that "[a]llowing [defendant] to retain possession of the [equipment] and compensating plaintiff for his investment therein was not an unreasonable method of fixing damages." *Id.* at 1130. The court stated that "the desired objective in ... fashioning a remedy is to evaluate a loss suffered by the most direct and practical method which could be employed." *Id.* Here, after terminating Lysenko's lease, the Sawayas relet the premises, and the new tenants continuously used the equipment for more than two years before trial. Also, the new tenants replaced the worn out equipment with newer versions. Equally important, the size and volume of the equipment apparently would have made removal problematic. Therefore, it appears that compensating Lysenko for his investment while allowing the Sawayas to retain possession of the equipment was the most practical method of providing relief.

¶ 8 Furthermore, it would be inequitable if we required the trial court to award Lysenko possession of the equipment. "In conversion cases, the trial court must be given the discretion ... to fashion an equitable remedy. If allowing the plaintiff to elect to recover the converted property itself will over-compensate him for his injury, then the election must be taken away from the plaintiff." *Storms v. Reid,* 691 S.W.2d 73, 74 (Tex.Ct.App.1985). Here, the Sawayas' new tenants made significant repairs and modifications to restore the equipment to working condition. Thus, awarding Lysenko possession would allow him to profit at the expense of the Sawayas' new tenants. In other words, Lysenko would receive the benefit of the restored equipment although it was the Sawayas' new tenants who went to the trouble and expense of improvement it. Thus, we conclude the trial court did not abuse its discretion in awarding Lysenko damages rather than possession of the equipment.

■ ¶ 9 Next, Lysenko contends that the trial court's decision to award damages rather than possession was not supported by adequate findings of fact. In a bench trial, the court must set forth the reasons for its decision in enough detail for the reviewing court to determine whether they are clearly erroneous. *See* Utah R. Civ. P. 52(a). These findings must be adequate to ensure "the trial court's discretionary determination was rationally based." *Roberts v. Roberts,* 835 P.2d 193, 195 (Utah Ct.App.1992) (citation omitted). Here, the trial court found "[w]hile some of the equipment which Lysenko purchased while still operating the restaurant continued to be used by Sawayas' new lessee, other equipment was disposed of and replaced by newer equipment." Obviously, the Sawayas could not return equipment they no longer possessed. Furthermore, the equipment that remained on the premises had been significantly repaired or modified and was being used by the Sawayas' new lessees at the time of trial. Accordingly, we hold the trial court's decision to award Lysenko damages rather than possession of the equipment was rational and supported by adequate findings of fact.

## II. Adequacy of Damages

■ ¶ 10 Second, Lysenko asserts the trial court erred in basing its damage award for conversion on the salvage rather than the in-place value of the equipment. Again, we disagree. This court has stated the "rules relating to the measure of damages [for conversion] are flexible, and .... [t]he primary objective ... is to award the injured party full compensation for *actual losses*." *Jenkins v. Equip. Cent. Inc.,* 869 P.2d 1000, 1004 (Utah Ct.App.1994) (emphasis added), *cert. denied sub nom. Jenkins v. Hesston,* 879 P.2d 266 (Utah 1994). Furthermore, "the trial court is vested with broad discretion and the award will not be set aside unless it is manifestly unjust or indicates that the trial court neglected pertinent elements, or was unduly influenced by prejudice or other extraneous circumstances." *O'Brien v. Rush,* 744 P.2d 306, 309 (Utah Ct.App.1987) (citation omitted). Thus, we must affirm the award of damages if evidence in the record supports the award. *See Cowen & Co. v. Atlas Stock Transfer Co.,* 695 P.2d 109, 115 (Utah 1984).

¶ 11 In this case, Lysenko's expert, L. Reid Steenblik, testified that two measures exist for determining the value of restaurant equipment: in-place value which measures the value of the equipment as a going concern; and salvage value, which measures the value of equipment to be removed from the restaurant and sold. Mr. Steenblik is the president of a company which has specialized in buying and selling used restaurant equipment for over twenty years. He valued each piece of equipment individually and determined that it had an in-place value of $35,185 and a salvage value of $10,980. In adopting Mr. Steenblik's figures the trial court stated:

> in order to compensate [Lysenko] for actual losses, his damages should be limited to the value he would have received by removing the equipment from the Burger King restaurant. Therefore, ... [Lysenko] is entitled to the salvage value of that equipment which remains in the restaurant and is currently used, that being $10,980 as well as a nominal value for the equipment disposed of in the amount of $2,000.

¶ 12 In light of the fact that no evidence was offered to refute Mr. Steenblik's estimates, and because it is within the trial court's discretion to accept or reject expert testimony, the trial court did not abuse its discretion in assigning the salvage value to the equipment. *See State v. Shickles,* 760 P.2d 291, 302 (Utah 1988). Essentially, the court below determined that the most equitable way to compensate Lysenko for his "actual loss" was to award him the equipment's salvage value. The court arrived at this determination because some of Lysenko's equipment had been disposed of or replaced by newer equipment. Furthermore, much of the remaining equipment had been significantly repaired and modified. Lysenko has not persuaded us that the court's decision to award the salvage value of the equipment was clearly erroneous. Furthermore, we conclude the trial court's award of salvage damages was amply supported by the record. The judgment is, therefore, affirmed.

¶ 13 Finally, Lysenko argues that he is entitled to the in-place value of the equipment under the theory of unjust enrich-ment. Specifically, Lysenko asserts that because the Sawayas have benefitted from the value the equipment adds to the premises, they should be required to pay for the equipment's in-place value. However, the Utah Supreme Court has stated that the unjust enrichment "doctrine is designed to provide an equitable remedy [only] where one does not exist at law. In other words, if a legal remedy is available ... the law will not imply the equitable remedy of unjust enrichment." *American Towers Owners Ass'n v. CCI Mechanical Inc.,* 930 P.2d 1182, 1193 (Utah 1996). In this case, Lysenko has failed to show that no other remedy at law exists. In fact, Lysenko has already obtained a money judgment against the Sawayas under the theory of tortious conversion. Thus, Lysenko's argument has no merit.

## CONCLUSION

¶ 14 The trial court acted rationally in awarding Lysenko damages rather than possession of the equipment and adequately set forth the reasons for its decision. Also, the trial court's decision to base damages for conversion on the salvage rather than the in-place value of the equipment was not clearly erroneous. Finally, because Lysenko has already prevailed on his conversion claim, he may not pursue the equitable remedy of unjust enrichment.

¶ 15 Affirmed.

¶ 16 DAVIS, Judge, concurs.

ORME, Judge (dissenting in part):

¶ 17 I concur in Part I of the court's opinion but, because I believe the trial court erred in awarding plaintiff only the salvage value of the equipment, I must dissent from Part II.

¶ 18 In its commendably detailed findings, the trial court, relying on the testimony offered by plaintiff's expert, accepted the expert's opinion that there were two ways to value the equipment defendants tortiously took from plaintiff: first, the equipment could be given an in-place value and, second, the equipment could be valued as if it had been removed from the restaurant. The court expressly found a value for the equip-

ment measured each way, and each sum as found by the court has adequate evidentiary basis in the record. Thus, which measure should actually be used in this case is essentially a legal question, not a factual one on which we owe the trial court a high degree of deference. *See generally State v. Pena,* 869 P.2d 932, 935 (Utah 1994) ("Legal determinations ... are essentially [determinations] of rules or principles uniformly applied to persons of similar qualities and status in similar circumstances.").

¶ 19 I believe the trial court erred in selecting the lower "salvage" value—as though the equipment had been removed— because in fact it remained in place at the restaurant. Presumptively, the measure corresponding to reality is the one that should be used. As we have previously noted, "the desired objective of damages is 'to evaluate any loss suffered by the most direct, practical and accurate method that can be employed.' "[1] *Ault v. Dubois,* 739 P.2d 1117, 1122 (Utah Ct.App.1987) (quoting *Even Odds, Inc. v. Nielson,* 22 Utah 2d 49, 448 P.2d 709, 711 (1968)).

¶ 20 Using reality as the frame of reference is especially appropriate in this case because the very reason the equipment remained in the restaurant is because defendants *wrongfully* barred plaintiff from removing it. *See Jenkins v. Equipment Ctr., Inc.,* 869 P.2d 1000, 1004 (Utah Ct.App.) (" '[R]ules relating to the measure of damages are flexible, and "can be modified in the *interest of fairness.*" ' ") (emphasis added; citations omitted), *cert. denied,* 879 P.2d 266 (Utah 1994). While the majority is concerned that plaintiff not reap a windfall by being awarded the in-place value of the property, our concern instead should be to make sure the tortfeasor does not benefit from his wrongful conduct. *See generally Alta Indus. Ltd. v. Hurst,* 846 P.2d 1282, 1291 (Utah 1993) (noting "the law allows a plaintiff to

maximize recovery and thus prevent a converter from profiting from wrongful acts"); Restatement (Second) of Torts § 926, at 538 (1979)("an intentional converter should not have the prospect of profiting from his wrong"); Restatement of Restitution § 151 cmt. f (1937) ("A person who tortiously has acquired, retained or disposed of another's property with knowledge that such conduct is wrongful is entitled to no profits therefrom."); Dan B. Dobbs, *Handbook on the Law of Remedies* § 5.15, at 414 (1973) ("[T]o prevent [unjust enrichment of the converter], the law allows the plaintiff to recover not merely compensation for his loss, but all of the defendant's gain as well.").

¶ 21 In essence, because defendants are responsible for plaintiff's equipment remaining at the restaurant, they simply should not be heard to contend that any value, other than the in-place value, is the value that matters in this case. Accordingly, I would increase the judgment to reflect the actual value of the equipment converted by defendants.

* * *

¶ 22 Another aspect of this case, not touched upon in the main opinion, troubles me. The equipment owned by plaintiff was transferred, as the main opinion says, to Curtis Loosli, and ultimately was returned to plaintiff. What the main opinion does not say is that, in the meanwhile, plaintiff filed for and received a discharge in bankruptcy. The upshot of the transfer to and from Loosli seems to be that plaintiff's general creditors were deprived of an asset that should have been available to satisfy their claims, namely, the value of the equipment insofar as it exceeded the amount of the secured creditor's interest therein.

¶ 23 Perhaps my concern is not well-founded because all of this was duly disclosed on the debtor's schedules and statements and

---

1. Because defendants converted the property in place—not after it had been removed from the restaurant—and benefitted from the in-place value when they entered into a new lease, the actual value of the property converted was the in-place value. *See Jenkins v. Equipment Ctr., Inc.,* 869 P.2d 1000, 1004 (Utah Ct.App.) (noting that damages for conversion should provide the injured

" 'party full compensation for actual losses' ") (citation omitted), *cert. denied,* 879 P.2d 266 (Utah 1994). *See also* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15, at 89–90 (5th ed.1984)(stating that measure of damages for conversion has historically been "full value of the chattel at the time and place of conversion").

was approved by the bankruptcy court, or in some way was properly beyond the purview of the bankruptcy court. But, on the surface, it is troubling enough that I will forward a copy of the decisions in this case to the clerk of the United States Bankruptcy Court for the District of Utah, with the request that copies be forwarded to the judge who presided over plaintiff's bankruptcy case, plaintiff's bankruptcy counsel, and plaintiff's bankruptcy trustee. Whatever the amount of plaintiff's judgment in this case, if it properly belongs to his creditors rather than to him, I believe we would be remiss if we did not take steps to alert those with some responsibility over the matter so that any appropriate action can be taken.