2004 UT App 258

**SHAR'S CARS, L.L.C., a Utah limited liability company; and Jeffrey D. Birschbach, Plaintiffs, Appellants, and Cross-appellees,**

v.

**Deloy ELDER and Bruce Rutherford, Defendants, Appellees, and Cross-appellants.**

**No. 20030082–CA.**

Court of Appeals of Utah.

July 29, 2004.

Steven G. Loosle, Kruse, Landa, Maycock & Ricks, LLC, Salt Lake City, for Appellants.

John K. Rice, Midvale, for Appellees.

Before Judges GREENWOOD, ORME, and THORNE.

## OPINION

GREENWOOD, J.

¶ 1 Third-party plaintiffs, Shar's Cars, L.L.C., (Shar's Cars) and Jeffrey Birschbach (collectively Plaintiffs), appeal a judgment entered in their favor against third-party defendant Deloy Elder in the amount of $22,500. Plaintiffs argue that the trial court erred by (1) concluding that Elder is not liable for debts incurred by the partnership he originally established with Bruce Rutherford (the Elder/Rutherford partnership) after August 31, 1998, (2) concluding that Elder is liable for only one-half of the partnership's obligations prior to August 1998, and (3) awarding damages based upon the partnership's net loss, rather than the partnership's unpaid expenses as of August 31, 1998.

¶ 2 Elder cross-appeals raising four issues. Elder argues that the trial court erred by (1) determining that Elder breached the contract, (2) deciding that the subsequent agreement between Shar's Cars and Bruce Rutherford did not constitute a full release of Elder's liability, (3) concluding that damages were capable of determination with reasonable certainty, and (4) denying his motion to dismiss at the conclusion of Plaintiffs' case in chief. We affirm in part, and reverse in part.

## BACKGROUND

¶ 3 This appeal arises from a breach of contract suit originally filed by Brasher's Auto Auction against Shar's Cars, Birschbach, and others. Shar's Cars and Birschbach answered and filed a third party complaint against Elder and Rutherford. Because he failed to file an answer, a default judgment was eventually entered against Rutherford.[1] The third-party suit was tried in December 2002. At the end of Plaintiffs' case, Elder's motion to dismiss was denied. At the conclusion of the trial, a judgment was entered against Elder in favor of Plaintiffs in the amount of $22,500.

¶ 4 In January 1998, Birschbach and his wife obtained a dealer's license to sell cars, and created Shar's Cars. At the same time, Elder and his partner Rutherford were in the business of wholesaling cars. While at an auto auction in early 1998, Birschbach met Elder and eventually Birschbach, Elder, and Rutherford entered into an oral agreement. Under the agreement, Elder and Rutherford would use Birschbach's dealer's license and continue their business selling cars both retail and wholesale. The agreement also provided that the Elder/Rutherford partnership would operate separately from Birschbach's wife's business, paying its own expenses, and distributing its profits between the two partners. However, in consideration for the use of the dealer's license, the partnership would pay Birschbach $100 for every car sold retail, pay the operating expenses of Shar's Cars, and help Birschbach learn how to purchase cars at auctions. The parties agreed that the Elder/Rutherford partnership would operate under the name Shar's Cars.

¶ 5 Under the agreement, Elder managed the dealership and maintained the financial records. In June 1998, Birschbach extended a loan to the Elder/Rutherford partnership for $25,000 to be paid back within thirty to sixty days. On or about August 15, 1998, Elder left the business and ended his partnership with Rutherford. Rutherford notified Birschbach of the dissolution of the partnership. Shortly thereafter, Rutherford and Birschbach met and agreed to carry on the business together. At that time, Birschbach was told that the Elder/Rutherford partnership was "down" between $5000 and $10,000. At the conclusion of the Elder/Birschbach partnership, the bank account was closed, and the remaining balance of $29,267.27 was either transferred to Birschbach and Rutherford's new business account, or used to pay off partnership debts. The repayment of the $25,000 loan to the partnership was extended and Rutherford agreed to make monthly payments on the debt.

¶ 6 In mid-October 1998, Birschbach was contacted by a State investigator concerning cars that were sold without delivering proper title. The investigator told Birschbach that as the dealer of record, he had full responsibility. Birschbach then began paying off the debts and clearing titles on the cars that had been sold. He also closed down Shar's Cars.

¶ 7 Elder was not involved in the closure of the business or repayment of any of the Elder/Rutherford debts, with one exception. In July 1998, Elder, on behalf of the partnership, signed a check for $21,600 to Garff Leasing representing payment for a truck. This check bounced. After notifying Birschbach of the bounced check in late November 1998, Garff Leasing agreed to accept repayment from Elder and Rutherford. Each signed a note promising to pay one-half of the check amount. Garff Leasing also required Birschbach to guarantee the notes. Elder paid his half of the bounced check, but Rutherford did not.

¶ 8 At trial, both sides called expert witnesses to testify about damages. Plaintiffs' expert, Macey Buker, testified that he only had access to three of the five accounts related to the business operations. He testified that his analysis was not complete because the financial records available were not complete. Nonetheless, Buker prepared a balance sheet showing that the partnership had liabilities of $193,040.86 and assets of $36,541.77 as of December 31, 1998. Mr.

---

1. The original plaintiff's case against Shar's Cars, Birschbach, and others was settled and dismissed leaving the third-party suit remaining.

Buker testified that he believed Elder was responsible for $48,635.13 under the Elder/Rutherford partnership agreement. Mr. Buker was unable to adequately determine which liabilities occurred before Elder left the partnership and which occurred after.

¶ 9 Elder's expert, Jeffrey Jensen, also tried unsuccessfully to prepare financial statements as of August 31, 1998, the time Elder left the partnership. Jensen agreed that the inadequacies of the records only allowed him to estimate. Jensen calculated that as of August 31, 1998, the business had a net loss of $35,105.61; however, Jensen testified that there was an error factor in his analysis, and the real amount could be anywhere from $25,000 to $50,000.

¶ 10 At the end of trial, the trial court found that a breach of contract had occurred because all of the expenses were not paid. The court found that Elder was not responsible for any liabilities occurring after he left in August 1998. The trial court found Plaintiffs' damages expert's testimony unhelpful because he did not estimate liabilities and assets for the period ending August 1998. Based on the calculations of Elder's expert, the court found $45,000 in damages, and ordered Elder to pay half, totaling $22,500.

## ISSUES AND STANDARDS OF REVIEW

### Plaintiffs' Issues

¶ 11 Plaintiffs first argue that the trial court erred by releasing Elder from partnership debts incurred after he left in August 1998. "[W]e will review the underlying facts under the deferential clear error standard." *MacKay v. Hardy*, 973 P.2d 941, 944 (Utah 1998). However, no deference is given to the trial court's resolution of the "legal effect" of those facts. *Id.*

¶ 12 Plaintiffs next assert that the trial court erred by concluding that Elder was liable for only one-half of the partnership's obligations. "Questions about the legal adequacy of findings of fact and the legal accuracy of the trial court's statements present issues of law, which we review for correctness, according no deference to the trial court." *In re C.K.*, 2000 UT App 11, ¶ 17, 996 P.2d 1059.

¶ 13 Finally, Plaintiffs argue that the trial court erred by awarding damages based on the partnership's net losses as of August 31, 1998, rather than on the partnership's unpaid expenses. "We review the trial court's decision to award damages under a standard which gives the court considerable discretion, and will not disturb its ruling absent an abuse of discretion." *Lysenko v. Sawaya*, 1999 UT App 31, ¶ 6, 973 P.2d 445.

### Elder's Issues

¶ 14 Elder, in his cross-appeal, first argues that the trial court erred in concluding that he breached the partnership agreement. A trial court's determination that one party is in breach of contract is usually a mixed question of fact and law. "Factual findings made by the trial court will be upheld unless they are clearly erroneous. Legal conclusions are reviewed for correction of error." *Mostrong v. Jackson*, 866 P.2d 573, 577 (Utah Ct.App. 1993) (citations omitted).

¶ 15 Elder next asserts that the trial court erred in deciding that the subsequent agreement between Shar's Cars and Rutherford did not constitute a full release of liability under the theories of novation, executory accord, accord and satisfaction, release, waiver, or estoppel. This also presents a mixed question of fact and law. "Factual findings made by the trial court will be upheld unless they are clearly erroneous. Legal conclusions are reviewed for correction of error." *Id.*

¶ 16 Next, Elder argues that the trial court erred in concluding that damages were capable of determination with reasonable certainty. The trial court's decision to award damages is reviewed giving the court "considerable discretion, and [we] will not disturb its ruling absent an abuse of discretion." *Lysenko*, 1999 UT App 31, at ¶ 6, 973 P.2d 445. "When considering testimony regarding valuation of property, the trial court 'is entitled to give conflicting opinions whatever weight [it] deems appropriate.'" *Morgan v. Morgan*, 854 P.2d 559, 564 (Utah Ct.App. 1993) (alteration in original) (citation omitted).

¶ 17 Finally, Elder argues that the trial court erred in denying his motion to dismiss at the conclusion of Plaintiffs' case in chief. " 'We review the [trial] court's denial of [Elder's] motion to dismiss for correctness, granting no deference to the [trial] court's ruling.' " *First Equity Fed., Inc. v. Phillips Dev., L.C.*, 2002 UT 56, ¶ 11, 52 P.3d 1137 (citation omitted).

## ANALYSIS

### I. Plaintiffs' Issues

#### A. Partial Release of Elder's Liability

¶ 18 Plaintiffs challenge the trial court's determination that Elder was released from liability for partnership debts incurred after August 31, 1998. In announcing its findings, the trial court noted that while Rutherford, Elder, and Birschbach never formally agreed to release Elder from all partnership liabilities, the court expressly found that Elder was "not responsible for anything after August 31st of 1998, that there was in fact a new agreement." Based on the evidence in the record and case law, the trial court correctly concluded that Elder was not liable for any debts incurred after his departure.

¶ 19 Normally, a partnership continues to exist until it has completed the statutory dissolution and winding up process. *See McCune & McCune v. Mountain Bell Tel.*, 758 P.2d 914, 917 (Utah 1988) (noting that "[d]espite the partnership's dissolution, it does not cease to exist 'until the winding up of partnership affairs is completed.' ") (quoting Utah Code Ann. § 48–1–27 (1982)). In this case, the parties did not follow the normal dissolution and winding up process. However, Elder's departure effectuated a dissolution of the Elder/Rutherford partnership.[2] Upon Elder's departure, the partnership's bank account was closed and partnership assets were either used to pay debts, or transferred to a new bank account. However, rather than formally winding up the partnership, Rutherford essentially carried on

the partnership by bringing in Birschbach as a new partner.

¶ 20 In *MacKay v. Hardy*, 973 P.2d 941 (Utah 1998), the Utah Supreme Court stated:

Under general partnership principles, a withdrawing or "outgoing" partner is not liable for partnership debts which arise after dissolution: "On the dissolution of a partnership by the withdrawal or retirement of a partner, the outgoing partner sustains no further relation to the remaining or continuing partners whereby they can exercise any authority binding on him, in the absence of circumstances giving rise to an estoppel. Thus, a partner is not personally liable for partnership debts where the partnership is dissolved before the inception of the debt, at least where notice of the dissolution is given to third parties who have dealings with the partnership."

*Id.* at 945 (quoting 59A Am.Jur. 2D *Partnership* § 909 (1987)).

¶ 21 In this case, the trial court found that during the formation of the new agreement between Birschbach and Rutherford, it was known, accepted, and agreed that Elder was no longer involved in the partnership. This finding was based in part on the oral agreement between the two after Rutherford informed Birschbach of Elder's departure. Further, the subsequent actions of Rutherford and Birschbach demonstrate an intent to carry on a partnership without Elder's involvement. Because Elder was not involved with the partnership after August 1998, the trial court correctly limited his liability to debts incurred prior to the dissolution of the Elder/Rutherford partnership.

#### B. Partnership Liability

¶ 22 Plaintiffs next assert that the trial court erred when it concluded that Elder was only liable for one-half of the partnership's debt. Plaintiffs contend that there is no basis for this conclusion under Utah's partnership law because partners are jointly liable for all debts. We agree.

---

2. "Dissolution" is defined as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as

distinguished from the winding up, of the business." Utah Code Ann. § 48–1–26 (2002).

¶ 23 Utah law clearly provides that "[t]he dissolution of a partnership does not of itself discharge the *existing* liability of any partner." Utah Code Ann. § 48–1–33(1) (2002) (emphasis added). "Under the Utah Uniform Partnership Act, partners are jointly, rather than jointly and severally, liable for all debts and obligations of the partnership not arising from tort or breach of trust." *McCune & McCune*, 758 P.2d at 917; *see also* Utah Code Ann. § 48–1–12 (2002). The main difference between "joint and several liability" and simply "joint liability," regarding a partnership's contractual debt, is that under the theory of joint liability the partnership's assets must be exhausted before partnership creditors can reach the partners' individual assets. *See McCune & McCune*, 758 P.2d at 917 (recognizing that the Utah Uniform Partnership Act likely follows the common-law exhaustion-of-partnership-assets requirement). However, even under joint liability, where the assets of the partnership are insufficient to satisfy partnership debts, the partners may be individually liable for the partnership's contracts. *See Helmsley v. Cohen*, 56 A.D.2d 519, 391 N.Y.S.2d 522, 523 (N.Y.App.Div.1977); *see also* 59A Am.Jur. 2D *Partnership* § 639 (2003). Thus, "upon each partner rests an absolute liability for the whole amount of every debt due from the partnership and although originally a joint contract, it may be separate as to its effects." *Bank of Commerce v. De Santis*, 114 Misc.2d 491, 451 N.Y.S.2d 974, 978 (N.Y.Civ.Ct. 1982).[3]

¶ 24 The trial court determined that $45,000 was owed by the partnership for a specified time period. Then, without explanation, the trial court "split that in half," and ordered Elder to pay $22,500. Because the partnership did not have any available assets, under the "joint liability" principles outlined above, the trial court should have found Elder individually liable for 100 per cent of the damages for that time period. *See Helmsley*, 391 N.Y.S.2d at 523. Elder provided no authority to support the proposition that when a partnership's assets are insufficient or depleted, the individual partners are only liable for a share of the debt proportionate to their share of the partnership.[4] Therefore, the trial court erred by limiting Elder's liability to one-half of the partnership's obligations.

## C. Damages of Net Loss Rather than Unpaid Expenses

¶ 25 Plaintiffs next argue that the trial court abused its discretion by calculating the damages based on the partnership's net loss rather than outstanding debts at the time Elder left the partnership. More specifically, they argue that the trial court did not award damages based on the parties' agreement which called for the partnership to pay all expenses incurred in the operation of the business.

¶ 26 Under Utah partnership law, upon dissolution of a partnership, "each partner ... may have the partnership property applied to discharge its liabilities." Utah Code Ann. § 48–1–35(1) (2002); *see also Cheves v. Williams*, 1999 UT 86, ¶ 36, 993 P.2d 191. In this case, while the Elder/Rutherford partnership did not go through the formal winding up process as outlined in Utah's Uniform Partnership Act, the partnership was clearly dissolved when Elder left. The record indicates that when Elder left in August 1998, he closed the partnership bank account and turned over his interest in any partnership assets, including money, inventory, and records. To accept the Plaintiffs' argument, and award damages based on unpaid expenses, would result in a windfall for

---

3. *Bank of Commerce v. De Santis*, 114 Misc.2d 491, 451 N.Y.S.2d 974, 978 (N.Y.Civ.Ct.1982), interprets New York Partnership Law section 26, which is nearly identical to Utah Code Annotated section 48–1–12 (2002).

4. Elder's only argument in response is that under Utah Code Annotated section 48–1–33(2), (3) (2002), his liability as a partner changed after Birschbach and Rutherford agreed to carry on the partnership without him. However, this issue was not raised below and therefore cannot be raised for the first time on appeal. *See Blackner v. State Dep't of Transp.*, 2002 UT 44, ¶ 16 n. 1, 48 P.3d 949 (noting that appellant's failure to raise argument before trial court resulted in waiver of argument on appeal). Moreover, even if this court were to accept Elder's argument, section 48–1–33 does not allow for a partner's liability to be split in half as the trial court did here.

Birshbach and would ignore Elder's partnership interests at the time of dissolution which Elder is entitled to have applied against the partnership liabilities. *See Mac-Kay v. Hardy,* 896 P.2d 626, 631 (Utah 1995) (holding that trial court erred in apportioning partnership's post-dissolution profits because its award resulted in improper windfall to one partner after failing to consider profits attributable to other partner's efforts). Therefore, the trial court did not abuse its discretion when it used the expert's net loss calculations rather than unpaid expenses in awarding damages.

## II. Elder's Issues

### A. Determination of Damages

¶ 27 Elder argues that there was insufficient evidence to allow the trial court to determine the amount of damages with any reasonable certainty. First he asserts that the experts' testimony of damages ranged from $25,000 to $220,000, and that the trial court arbitrarily ruled that there was $45,000 in damages. Second, he argues that proof of damages was based on speculation because neither of the expert witnesses had access to all of the records and both acknowledged that their analysis was incomplete.

¶ 28 In explaining its damages ruling, the trial court stated:

I've got a range of damages of $220,000 from Mr. Buker, but that goes all the way to the end of 1998 where the court finds that the only relevant time is February of 1998 to the end of August 1998.... But I don't have anything from [P]laintiff's side as to the amount of loss or damages in that discreet time of February to the end of August of 1998.

The trial court clearly excluded Birschbach's expert's testimony regarding damages that extended to the end of the year because its damages award covered only the time period of February 1998 to August 1998. Consequently, only the testimony of Elder's expert, Mr. Jensen, was relevant. Mr. Jensen testified that during that time frame the negative balance was approximately $35,000. When pressed further, Mr. Jensen explained that it was more likely somewhere between $25,000

and $50,000. In its decision, the trial court noted:

It's apparent on cross examination that it should be to the higher level, higher than $35,000 based upon the rebuttal evidence as to what was in the ending inventory or not in the ending inventory at the time of August 31, 1998.

The trial court then increased the damage award from Mr. Jensen's estimate of $35,000 to $45,000 based on the trial testimony. The record demonstrates a more concise reasoning than Elder alleges. In reality, the trial court's decision does not appear to be a "free for all" as Elder asserts. This court has held that "we must affirm the award of damages if evidence in the record supports the award." *Lysenko v. Sawaya,* 1999 UT App 31, ¶ 10, 973 P.2d 445. Furthermore, "[w]e will not reverse the trial court's findings of partnership losses unless they are clearly erroneous." *Killian v. Oberhansly,* 743 P.2d 1200, 1201 (Utah 1987).

¶ 29 Elder's second argument that because neither expert had complete access to all of the records, the trial court had no reliable basis for its damage award also fails. We have previously held that when the certainty of evidence of damages is lacking, the wrongdoer must assume some of the risk. *See ProMax Dev. Corp. v. Mattson,* 943 P.2d 247, 255 (Utah Ct.App.1997). Further, "to prove the amount of damages, the evidence must 'rise[ ] above speculation and provide[ ] a reasonable, even though not necessarily precise, estimate of damages.'" *Id.* (alterations in original) (citation omitted). The trial court's findings on damages were not erroneous because the evidence supported the findings, and while not exact, Elder's expert was able to provide the trial court with a reasonable estimate of damages.

### B. Breach of Contract and Release

¶ 30 Elder next appeals two of the trial court's factual findings. First, he argues that the trial court erred in determining that he was in breach of contract. Second, Elder asserts that the trial court erred when it found that there was not a full release of Elder's liability based on the common law theories of novation, executory accord, accord

and satisfaction, release, waiver, or estoppel. In order to successfully challenge the trial court's findings, Elder must " 'marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be "against the clear weight of the evidence," thus making them clearly erroneous.' " *ELM, Inc. v. M.T. Enters.,* 968 P.2d 861, 865 (Utah Ct.App.1998) (citation omitted).

¶ 31 Elder does not even attempt to meet the marshaling burden for either of these arguments. He does not outline the evidence supporting the trial court's findings, nor does he argue how those findings are clearly erroneous. Elder simply repeats arguments previously made to the trial court, or raises new points for the first time on appeal. Because Elder has not marshaled the evidence, we assume that the record supports the trial court's findings that there was a breach of contract, and that Elder was not fully released from liability by Rutherford's subsequent agreement with Birschbach. *See Young v. Young,* 1999 UT 38, ¶ 30, 979 P.2d 338 (stating that as a result of the defendants' failure to marshal evidence, "they fail to meet their burden on appeal, and we assume that the evidence adequately supported the finding.").[5]

## CONCLUSION

¶ 32 Based on the oral agreement between Rutherford and Birschbach, and based on their subsequent actions, the trial court was correct in determining that Elder was not liable for any partnership debts that were incurred after his departure in August 1998. However, because partners are jointly liable for debts based on partnership contracts, the trial court erred in limiting Elder's liability to one-half of the partnership's obligations incurred while he was a partner.

¶ 33 Next, the trial court was correct when it calculated the damages based on the partnership's net loss rather than outstanding debts because under Utah's Uniform Partnership Act, Elder was entitled to have the partnership assets existing at the time of dissolution applied against any existing liabilities.

¶ 34 Regarding Elder's cross-appeal, the trial court did not err by basing its damages decision on the testimony of Elder's expert even though the evidence did not provide a precise amount of damages. We reject Elder's remaining three claims for the reasons stated above.

¶ 35 Therefore, we affirm in part, but reverse and remand on the issue of the amount Elder's joint liability for partnership debts incurred prior to August 31, 1998.

ORME and THORNE, JJ., concur.

---

**5.** We also find unpersuasive Elder's final argument that the trial court erred when it denied Elder's motion to dismiss at the end of Plaintiffs' case in chief. First, Elder's three very brief paragraphs on this point make a meaningful review of this question very difficult. *See State v. Thomas,* 1999 UT 2, ¶ 11, 974 P.2d 269 (" ' ' "[A] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research." ' " (alteration in original) (citations omitted)). Second, reviewing the evidence in the light most favorable to Plaintiffs, the trial court was correct in concluding there was enough evidence of damages to deny Elder's motion to dismiss.